AMERICAN FIDELITY COMPANY OF
MONTPELIER, VERMONT

*vs.*

STATE OF MARYLAND,
TO THE USE OF CHARLES COBB, JR.

*Action on Contractor's Bond—Price of Material—Assignment of
Claim—Proof of Agency—Telegram—Secondary Evi-
dence—Application of Payments— Rights of Surety.*

In an action against a surety on the bond of a contracting
company, by the assignee of a claim against the company for
the price of cement furnished it, testimony by plaintiff that the
security afforded by the bond was an inducement to his pur-
chase of the claim, while not material, was not cause for reversal,
since it could not well have prejudiced the defense, and plaintiff
had previously testified to the same effect without objection.

p. 330

In an action against the surety on the bond of a contracting
company, for the amount of a claim against the company for
material furnished, evidence of a delegation of authority by
plaintiff to an officer of the company, after the company had
become bankrupt, was not relevant for the purpose of proving
that such officer was plaintiff's agent at a time a month and a
half previous, and as such authorized to agree to the applica-
tion of a payment made to plaintiff to the particular claim in
suit.                                                        pp. 330, 331

In a suit against the surety on a contractor's bond, by the
assignee of an account against the contractor for cement fur-
nished, a note having been given, according to one witness, for
the purpose of a conditional sale of the cement account by plain-
tiff to the maker of the note, under an agreement that the ac-
count should be transferred to him if the note was paid at
maturity, which was not done, and according to another wit-
ness, for the purpose of inducing plaintiff to give financial aid
in reorganizing the company, with the understanding that the
note should be paid by the company if successfully reorganized,

*held* that testimony that plaintiff did not furnish money as agreed by him for the reorganization of the company was irrelevant, since the conditions described in both versions of the agreement failed of fulfillment, and plaintiff's right to collect the cement account remained unimpaired on either theory.    p. 332

In an action against the surety on the bond of a contracting company, on account of cement furnished the company, *held* that evidence as to the total amount of advances made by one who had no interest in the claim, but merely a profit-sharing contract with the company, was irrelevant.    p. 333

Since the copy of a telegram received by the addressee is itself merely secondary evidence of the original message delivered to the telegraph company by the sender, and can be admitted as secondary evidence only upon proof that it was a correct transcript of a message actually authorized by the party sought to be affected by its contents, an offer of evidence as to the contents of such copy, without any reference to the original message, was properly refused.    p. 331

The declarations of an alleged agent are not competent evidence of the existence of the agency, in the absence of independent proof of circumstances from which the agency may be inferred.    p. 333

In an action on a claim against the surety on the bond of a contracting company, for the price of cement furnished the company, plaintiff, who had purchased the cement claim against the company, also holding other claims against it, *held* that the evidence that the company directed plaintiff to apply upon the cement claim a payment made by it to him, or that he had previously agreed so to apply the payment when made, was not so conclusive as to justify the direction of a verdict in favor of defendant.    pp. 333, 334

A creditor holding claims for material or labor against a contractor must devote the payments, made to him out of the funds derived from the work for which the material or labor was furnished, to the satisfaction of those claims, and thus to the relief of the liability of the surety on the contractor's bond for the particular work, and such payments cannot be first applied by the creditor to other claims he may have against the contractor, and especially is this the case when the creditor of

the contractor has knowledge of the source of the payment he
receives.                                                      p. 334

If a claim against the contractor was based on loans to him
expressly or impliedly agreed to be used in the payment of
labor and hauling accounts for which the surety on the con-
tractor's bond was liable, and the money loaned was actually
used for such purposes, the holder of the claim is entitled, un-
less the surety directs a different application, to devote a pay-
ment, made to him from funds derived from the work for which
the labor and hauling were furnished, to such claim for money
loaned, rather than to a claim for materials furnished the con-
tractor, but he is not entitled to apply it to a claim based on a
loan made merely for the contractor's general requirements.

p. 335

Where an instruction given at plaintiff's request submitted to
the jury in general terms the question whether the claim in suit
had been paid and, in order to answer this question in the nega-
tive and find for plaintiff, it was necessary for the jury to con-
clude that a certain payment made to plaintiff was not appro-
priated by the debtor primarily and specifically to this claim,
and this issue of the appropriation of the payment was that to
which the jury's attention was mainly directed throughout the
trial, they must have understood that they were by this instruc-
tion required to pass upon it, and the instruction was not objec-
tionable as ignoring that issue.                               p. 336

An instruction to the jury to find for the defendant in case
they should find an agreement that the claim in suit should be
paid from a certain fund to be received by the debtor, and that
a sufficient sum derived from that fund was paid to plaintiff,
but was applied by him to other claims held by him against the
same debtor, *held* properly refused, as disregarding testimony
from which the jury could find that the debtor agreed to pay
all the plaintiff's claims against him from the fund referred to.

pp. 336, 337

A prayer which assumes facts as to which the evidence is con-
flicting is properly refused.                                  p. 337

*Decided December 9th, 1919.*

Appeal from the Court of Common Pleas of Baltimore
City (STANTON, J.).

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*Edward M. Hammond,* with whom was *Robert Biggs* on the brief, for the appellant.

*Robert R. Carman,* with whom were *Keech, Wright & Carman* and *James T. Carter* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

The Carpenter Company, a Virginia corporation, contracted with the State Roads Commission of Maryland for the construction of two sections of concrete roadway in Cecil County. There was a separate contract for each of the sections. The bonds required by law to be given to the State of Maryland for the proper performance of the contracts, and for the payment of "all just debts for labor and materials incurred by the contractor in the construction and improvement of the road contracted for," were executed by the American Fidelity Company, of Montpelier, Vermont, as surety. The total amount of indemnity provided by the two bonds was $119,022.45. The equitable appellee, Charles Cobb, Jr., at the request of the Carpenter Company, the contractor, paid a bill of $2,531.25 for cement used in the road work, and took an assignment of the account from the corporation by which the material was furnished. In this suit the assignee seeks to recover the amount of the claim from the surety on the contracting company's bonds. The principal defense is that the claim was paid by a check for $3,600 issued by the Carpenter Company to Mr. Cobb and intended to be applied, so far as necessary, to the payment of the cement bill, but which he in fact applied to other claims not included in the surety's liability. The trial resulted in a verdict and judgment in favor of the plaintiff for $2,401.70, the claim being credited with a dividend of $129.55 from the Company's estate in bankruptcy. The defendant surety company has appealed.

There are twelve bills of exceptions, eleven relating to the admissibility of evidence, and one to the instructions. The first four exceptions are not pressed, as the rulings to which they refer were clearly correct.

The fifth exception was taken to the action of the trial Court in allowing the plaintiff to testify that the security afforded by the contractor's bonds was an inducement for his purchase of the cement claim. The witness had previously testified to that effect without objection. While this was not a material subject of inquiry, the statement objected to could not well have caused any prejudice to the defense, and its admission, therefore, was not reversible error.

No reference is made in the appellant's brief to the sixth exception, and we see no reason to disturb the ruling to which it was reserved.

The seventh exception was taken to the refusal to admit secondary evidence, offered by the defendant, to prove the contents of a telegram said to have been sent by the plaintiff to his son, Charles Cobb III, authorizing him to represent his father in an attempted reorganization of the Carpenter Company and in reference to the claim now in suit. It was proposed by this proof to support the defendant's theory that Charles Cobb III, who was president of the Carpenter Company, and to whom its check for $3,600 was delivered for transmission to his father, was the agent of the latter with implied authority to receive instructions, binding upon the principal, as to the application of that payment. Elsewhere in the record there is testimony on behalf of the defendant to the effect that the check was received by Charles Cobb III on the occasion of a conference in the office of the Company as to the appropriation to various purposes of a fund of about $18,000 which had been paid by the State Roads Commission on account of the Company's contracts. The other participants in the conference were Mr. G. Y. Carpenter, who was interested in the Company as an incorporator, and Mr. James B. Clark, whose firm, Clark-Hayward Company, had a profit

sharing contract with the Carpenter Company under which
Mr. Clark had an active part in the management of the con-
struction work referred to, and in consideration of which he
had become indemnitor of the surety on each of the bonds in
question to the amount of $40,000.   It was testified by Mr.
Clark that the check for $3,600, to the order of Charles Cobb,
Jr., was handed to Charles Cobb III on the occasion men-
tioned "with instructions" that it was to be applied to the
payment of the assigned cement bill, and the balance to any
other claims of the plaintiff against the Company.   It does
not appear that Charles Cobb III, as its president or in any
other capacity, assented to the "instructions" or that they
were authorized by the corporate debtor.   There is no evi-
dence from which it can be inferred that any direction as to
the application of the check was communicated to the plain-
tiff, but the effort of the defense was to prove that he was
represented in the transaction by his son to such an extent
as to be bound by what was said to him as to how the pay-
ment should be applied.   According to the proffer of the
testimony to which the seventh exception was taken, the tele-
gram referred to was sent more than six weeks after the de-
livery of the check which the defendant insists should have
been applied to the cement bill held by the plaintiff as as-
signee.   The reorganization to which the proffer referred was
being undertaken because the Carpenter Company had gone
into bankruptcy.   It is difficult to see how a delegation of
authority at that time and under those circumstances could
tend to prove the existence of a similar agency a month and
a half previously.   But there is another objection to the prof-
fered testimony.   It was not designed to prove the contents
of the original message, as delivered to the telegraph com-
pany by the sender, but was offered for the purpose of show-
ing what was written in the copy received by the addressee.
If the copy itself had been produced, it could not have been
admitted as secondary evidence except upon proof that it was
"a correct transcript of a message actually authorized by the

party sought to be affected by its contents." *Smith* v. *Easton*, 54 Md. 145. In view of this deficiency in the proffer, it is unnecessary to decide whether a sufficient foundation was laid for the introduction of secondary evidence of the telegram.

In order to discuss the eighth exception we must refer to a feature of the case to which we have not yet alluded. Sometime after the Carpenter Company had gone into bankruptcy Mr. Clark gave his individual note to the plaintiff for the amount of the cement bill now in litigation. The note was given as the result of negotiations between Mr. Clark and Charles Cobb III. As explained by the latter witness, the occasion for the note was the conditional sale of the cement account by the plaintiff to Mr. Clark under an agreement that the account should be transferred to him if the note was paid at its maturity, but this condition was not performed. It was testified by Mr. Clark, on the other hand, that he gave the note in connection with the effort to reorganize the Carpenter Company and because Charles Cobb III stated his inability to secure the financial aid of his father to that end unless he was conciliated by the payment of the cement bill, and the understanding was that if the company was reorganized and proved to be successful, it would take care of the note, otherwise the amount would be paid in equal proportions by Charles Cobb III, G. Y. Carpenter and the witness. The eighth exception was reserved to the exclusion of testimony that Charles Cobb, Jr., did not furnish the money which he was to contribute under this agreement towards the reorganization of the company, which was therefore not accomplished. But as the conditions described in both versions of the agreement failed of fulfillment, and as the right of the plaintiff to hold and collect the cement claim remains unimpaired on either theory, the transaction was irrelevant to the present issue. There was consequently no error in this ruling.

The ninth bill of exceptions deals with the exclusion of testimony offered by the defendant to prove a statement by

Charles Cobb III. that he had authority to represent his father in arranging for the financing of the company with a view to its reorganization, and to prove in the same way as previously attempted the contents of the telegram mentioned in the seventh bill of exceptions. The ruling as to the proposed secondary evidence of the telegram was proper for the reasons already mentioned. The statement attributed to Charles Cobb III in the proffer not only related to a matter which is not relevant to the issue, but it was inadmissible to prove the agency to which it purported to refer. The declarations of an alleged agent are not competent evidence of the existence of the agency in the absence of independent proof of circumstances from which the agency may be inferred. *Wilson* v. *Kelso,* 115 Md. 171; *Nat. Mechanics Bank* v. *Nat. Bank of Balto.,* 36 Md. 20; *Roland* v. *People's Bank of Somerset County,* 134 Md. 218.

The testimony ruled inadmissible under the tenth exception related to Mr. Clark's advances to the Carpenter Company and was clearly irrelevant. What we have said with respect to the eighth exception disposes also of the eleventh.

This brings us to the consideration of the prayers, which are the subject of the twelfth and last exception. Two prayers were granted at the instance of the plaintiff, and of the eleven prayers offered by the defendant two, numbered 5½ and 10, were granted and the others were rejected.

It is objected generally that the rulings on the prayers did not give effect to the theory, which the defendant urged, that according to the uncontradicted evidence the plaintiff was directed by the Carpenter Company to apply the $3,600 check it gave him to the payment primarily of the cement claim, and that he and the Company had previously agreed upon the payment of this claim out of the first funds received from the State Roads Commission. Upon the ground that there was no contradiction in the proof on this subject, the first, second, eighth and ninth prayers of the defendant all proposed that a verdict be directed in its favor.

It does not seem to us that the case could properly have been withdrawn from the consideration of the jury. The evidence does not require the conclusion that the Carpenter Company directed the plaintiff as to the application of the $3,600 check, or that he previously agreed to apply such a payment primarily to the extinguishment of the cement claim. The agency of the plaintiff's son, through which he is sought to be bound by the "instructions" as to the application of the payment, is not so conclusively proven as to justify a directed verdict for the defendant on that theory.

More favorable consideration might be given to the prayers to withdraw the case from the jury if the only inference to be drawn from the evidence was that the other claims of the plaintiff, to which he applied the $3,600 payment, were not also entitled to be paid out of the funds derived from the construction work in reference to which the defendant's liability was contracted. There is strong authority for the proposition that a creditor holding claims for material or labor against a contractor must devote the payments made to him out of funds derived from the work for which the material or labor was furnished to the satisfaction of those claims and thus to the relief of the liability of the surety on the contractor's bond for the particular work, and that such payments cannot be first applied by the creditor to other claims he may have against the contractor. This principle has been held to be especially effective where the creditor of the contractor has knowledge of the source of the payment he receives. The decisions on this subject are considered in 21 *R. C. L.* 111, and are cited and discussed in a note appended to the case of *Sturtevant Co.* v. *Fidelity & Deposit Co.* (92 Wash. 52) in L. R. A., 1917 C. 630. They proceed upon the general theory that a surety who is liable on a contractor's bond for the payment of labor and material claims incurred under the contract has an equitable right to have the funds derived from the contract devoted primarily to those purposes.

In this case the defendant's contention is that the debts to
which the plaintiff applied the payment in question were not
incurred under the road contracts from which the funds used
in making the payment were derived.  There is evidence in
the record tending to support that view.  It is contended, on
the contrary, by the plaintiff that the contractor's bonds were
liable not only for the cement claim but also for the other
debts to which the $3,600 check was actually applied.  This
theory also is not without support in the record.  It is not
denied that, independently of the cement bill, the Carpenter
Company owed the plaintiff more than $3,600 for money ad-
vanced by him which was used by the Company in paying
for labor and team hire.  But the testimony admits of dif-
ferent inferences as to whether those particular claims were
for labor and other service furnished under the contracts as
to which the defendant is surety, and whether the loans ob-
tained from the plaintiff were made for the specific purpose
of paying those claims, or were made simply for the com-
pany's general requirements.  In the last of these contin-
gencies the bonds would clearly not be liable.  *Southern Md.
Bank* v. *National Surety Co.,* 126 Md. 290.  If, however,
the claims of the plaintiff to which he applied the $3,600
check were based on loans of money expressly or impliedly
agreed to be used in the payment of labor and hauling ac-
counts for which the defendant, as surety on the contractor's
bonds, was liable, then, in view of the fact that the money
loaned was actually used for such purposes, the considera-
tions supporting the defendant's equitable right to require
the application of the check to the cement bill rather than to
the other claims could no longer be found to exist.  In that
event the plaintiff would have the right, in the absence of
direction by the defendant for a different application, to de-
vote the payment to the other claims in his own discretion.
*Jockey Club* v. *State,* 107 Md. 262; *Dickey* v. *Permanent
Land Co.,* 63 Md. 170.  There was testimony in the case from
which it could be found that the claims on which the check

. for $3,600 was applied by the plaintiff were for money advanced for payrolls, and, as we have already said, the evidence admits of the inference that these debts originated under the contracts in regard to which the defendant's liability was assumed. Under all the circumstances to which we have referred we think the refusal of the trial Court to direct a verdict for the defendant, as proposed in the first, second, eighth and ninth prayers, was proper.

Objection is made to the first prayer of the plaintiff on the ground that it ignores the issue as to the direction or agreement for the application of the payment in dispute. This instruction submits to the jury in general terms the question whether the claim sued on had been paid. In order to answer this question in the negative and find for the plaintiff, it was necessary for the jury to conclude from the evidence that the $3,600 payment was not appropriated by the Carpenter Company primarily and specifically to the claim with which we are now concerned. The jury could not find that the claim had been paid unless it reached the conclusion that such an appropriation had been made by instructions communicated to the plaintiff or his authorized agent. This was the issue to which the attention of the jury was mainly directed throughout the trial, and they must have understood that they were required to pass upon it under the terms of the plaintiff's first prayer. No objection was made in the argument to the second of the two instructions granted at the plaintiff's request.

The defendant's fourth prayer sought an instruction that if the jury should find an agreement between the plaintiff and the Carpenter Company that certain money due the Company by the State should be collected and that an amount thereof sufficient for the payment of the account sued on should be applied to that purpose, and that a sufficient sum so derived was paid to the plaintiff, but was applied by him to other debts due him from the Company, then the verdict should be for the defendant "since under the law of Mary-

land a debtor has the right to say what obligations shall be liquidated with funds of the debtor coming into the hands of the creditor." This prayer disregards testimony in the case from which the jury could find that the company agreed to pay all of the plaintiff's claims, for money advanced for payrolls as well as the cement bill, out of the funds to be received from the State. Such an agreement would comprehend and be consistent with the one mentioned in the prayer, but it would preclude the use of the latter as a ground for the proposed instruction to the jury to find for the defendant.

The theory of the defendant's rejected fifth prayer is fully presented in the prayer numbered 5½, which was granted.

The sixth prayer of the defendant assumes that the cement account was the only claim of the plaintiff incurred under the contracts to which the defendant's liability as surety relates, and it assumes also as a fact the existence of an agency on the part of the plaintiff's son to receive directions binding on the plaintiff as to the application of the payment we have had under consideration. For these reasons the prayer was objectionable.

By the defendant's seventh prayer, which is the only one yet to be considered, it was definitely asserted, as a matter of law, that it was the duty of the plaintiff to apply the $3,600 check, so far as necessary, to the payment of the cement claim, and a verdict for the defendant was proposed to be directed on that ground. This prayer could not have been granted consistently with the views we have already expressed.

No occasion for a reversal has been found in any one of the rulings.

*Judgment affirmed, with costs.*