## NEW AMSTERDAM CASUALTY COMPANY *vs.* STATE, Use of Green.

*Road Contractor's Bond—Claim for Money Loaned.*

That a loan to a contractor on a state road was made upon the condition that the contractor was to use the money loaned in paying for materials furnished in the construction of the road, and that it was so used, did not entitle the lender to recover upon the contractor's bond, although this was conditioned for the payment of all persons furnishing material or performing labor, the agreement as to the use of the money loaned being made by the lender with the contractor alone, without the knowledge of the materialmen or of the surety on the bond.

*Decided April 7th, 1925.*

Appeal from the Superior Court of Baltimore City (STANTON, J.).

Action by the State, to the use of J. Ernest Green, against the New Amsterdam Casualty Company. From a judgment for plaintiff, defendant appeals. Reversed.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, and WALSH, JJ.

*Aubrey Pearre* and *William L. Henderson,* with whom were *Stewart & Pearre* on the brief, for the appellant.

*Walter L. Clark,* with whom were *Charles T. Reifsnider* and *Edwin C. Irelan* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment recovered for the use of the equitable plaintiff, J. Ernest Green, against the appellant, the New Amsterdam Casualty Company, on a state road contract bond executed by it as surety.

The substantial facts of the case are these:

In April, 1922, the firm of Owens Laws & Company, composed of Owens Laws and Armin Auer, was awarded by the State Roads Commission of Maryland a contract to build a concrete road in Cecil County, and on April 22nd of that month the firm, as principal, with the appellant, the New Amsterdam Casualty Company, as its surety, executed to the State of Maryland a bond which contained, among others, the condition that if

> "the above bounden principal * * * shall well and truly pay all and every person furnishing material or performing labor in and about the construction of said roadway, all and every sum or sums of money due him, them or any of them for such labor and materials for which the contractor is liable * * * then this obligation to be void or otherwise to be and remain in full force and virtue."

In the contract for building the road, of which the bond was made a part, and for the faithful performance of which the bond was executed, it was agreed:

> "that the said contractor shall not assign this contract nor any part thereof, nor any right to any of the moneys to be paid him hereunder, or shall any part of the work to be done or materials furnished under said contract be sublet, without the consent in writing of the State Roads Commission."

After the work was started under the contract, Mr. Owens Laws, one of the contracting firm, in June, 1922, wrote to his brother-in-law, Mr. Green, the plaintiff, whom he had intimately known for years and who at the time was in Chattanooga, Tenn., the following letter:

"I am going to ask you, if you have at this time, any surplus funds that the company might use for a month or so.

"I have in mind a cement bill, which will be due some time in the early part of July, and by paying this bill within 10 days the cement company will allow us a very liberal discount, and this will also make our credit that much stronger.

"The State will pay us for this material next month, that is in August, and we will be in a position to meet this obligation at that time.

"Write when you will be in town again."

This letter was not answered by Mr. Green, but shortly thereafter, in July following, he returned to Baltimore, where he personally saw Mr. Owens Laws and discussed with him the loan suggested in his letter, and it was agreed between them, as he said, that he would loan him the money upon the condition named in the letter, and that was, that the loan was to be repaid "from the settlement that was due from the State the following month." He went on to say: "Although I knew Mr. Auer, I did not know Mr. Auer the length of time I had known Mr. Laws and I wanted these stipulations so that there would be no reason about my getting my money and he said it would be perfectly agreeable to take this money from the settlement that was due from the State the following month to reimburse me for this money. That was the condition under which it was loaned."

It appears from the record that Mr. Green, the plaintiff, left Baltimore before the money was actually paid over to Mr. Laws. This was owing to the fact that arrangements had to be made as to the hypothecation of certain bonds belonging to him by means of which he was to obtain the money to make the loan. This, it seems, was looked after by his father, who paid the money over to Mr. Laws, as shown by the following letter from Owens Laws to Green, dated July 15th, 1922, in which it is said:

"Today I have turned to your father the company's demand note for fifteen hundred dollars, which amount

was paid over to us by him for you on July 7th. This money will enable us to discount our cement bill.

"I greatly appreciate your coming to our rescue, and we hope to be able to repay the favor some time in the future."

The note above referred to was dated July 15th, 1922, and was signed by Owens Laws and Armin Auer, as individuals. Prior to the execution and delivery of said note, Laws and Auer, by their check dated July 10th of the same year, paid the Tidewater Portland Cement Company the sum of $1,193.50, for cement bought from that company and used in the construction of the road. This amount, as claimed by them, was paid out of the sum of $1,500 borrowed from the plaintiff. The work upon the road was shortly thereafter taken over by the defendant because of the financial inability of Laws & Company, the contractors, to complete it, and from and after that time the money for the construction of the road, as the work progressed, was paid over to the defendant company. The money borrowed by Laws & Company not having been paid by them, Green, through his counsel, on the 26th day of December, 1922, wrote the defendant demanding payment by it of the money borrowed of him by them, stating therein that "at the time the loan was made the condition was imposed that the money was to be used in discounting the bills for cement put into the job," and that the same was so used. To this letter the defendant replied denying all liability, and refused to pay the money demanded of it. It was then that the suit upon the bond in this case was brought.

The declaration, in addition to the salient facts above stated, contained the allegation that the said loan from the plaintiff to Laws & Company was made "upon the condition" that the said Laws & Company "were to use the said money or moneys in the paying for labor performed and materials furnished in and about the construction of said roadway, and such money was so used in paying the cement bill of the Tidewater Portland Cement Company, amounting to $1,193, and

the balance of said amount so loaned as aforesaid was used in paying labor performed and hardware furnished and used in the construction of * * * said highway."

A demurrer to the declaration was overruled and the case proceeded to trial, resulting in a verdict for the plaintiff for the sum of $1,294.95, being the amount paid by Laws & Company to the Tidewater Portland Cement Company for the cement bought by them from it and used in the construction of the road, with interest thereon. A judgment was entered upon the verdict and it is from that judgment that the appeal in this case has been taken.

By the demurrer, the question was presented whether one lending money to a road contractor *upon the condition* that the money so loaned is to be, and is, used to pay for material used in the construction of the road, can recover against the contractor's surety, if the contractor fails to repay the money so borrowed, where the bond contains a provision, as required by the statute (Code, art. 91, sec. 36) that the contractor "shall well and truly pay all and every person furnishing material and performing labor in and about the construction of said roadway, all and every, sum or sums of money due him, them or any of them, for such labor and materials for which the contractor is liable."

It is not only conceded by the plaintiff, but it is made clear by the decision of this Court in the case of *State, use of Southern Maryland Bank v. National Surety Company,* 126 Md. 290, that without the words "upon the condition" found in the clause set out in the declaration, the demurrer to the declaration should have been sustained. Therefore, it is only because of the insertion of those words in the declaration that the claim is made that the declaration is good and that the demurrer was properly overruled.

In the case of *State, use of Southern Maryland Bank v. National Surety Company, supra,* the contractor for the construction or re-construction of a public road in Charles County borrowed money from the Southern Maryland Bank, for which it gave its promissory notes. The notes were not paid

and suit was instituted against the contractor's bond as in this case. The bond in that case contained a covenant to pay all debts for labor and material incurred by the contractor in the construction and improvement of the road. A demurrer to the declaration was filed and sustained, and the sole question there presented for determination was the liability of the surety company upon the bond for the money borrowed from the bank and used to pay the wages of laborers employed upon the work and for materials obtained and used in the construction of the State highway. It was there held, notwithstanding the broad construction now given to such undertakings, that the same could "hardly be extended so as to reverse the rule that the liability of the surety upon his bond is dependent upon his covenants and agreements." And in support of its statement, the court cites a number of cases of this and other states.

It is true that, in that case, Judge Stockbridge, speaking for this Court, thereafter said: "Here the indebtedness sought to be recovered consists of money loaned upon promissory notes. It does not appear either from the notes themselves, or from any allegation in the *narr.* that the loan was made upon any condition whatsoever. It is alleged that the money so obtained was used in paying for labor and materials, but there is no allegation that the loan was made upon such a condition. If such a condition had been imposed when the loan was made, an entirely different question might have been presented, one which this Court is not now called on to decide." This expression of the Court in respect to a question not raised and not involved in the decision of the case, was a mere *dictum,* without any binding effect, as conceded by the counsel for the plaintiff. It is, however, upon this expression, followed by others found in *American Fidelity Company v. State,* 128 Md. 50; *American Fidelity Company v. State,* 135 Md. 326, and *Gill v. Mullan,* 140 Md. 1, in which references are made thereto, that the plaintiff chiefly relied for a decision favorable to him upon the question presented.

In the case of *American Fidelity Company v. State,* 128 Md. 50, the suit was brought by a lumber company against the surety on a road contractor's bond to recover the amount owing to it for lumber sold and furnished by it to the contractors, which was used in the construction of the road. Two questions were presented by the appeal and both were decided against the appellant, the surety on the bond. The first went to the validity of the statute requiring the above mentioned provision to be inserted in the bond, and the second, to the liability of the surety upon the facts of that case. There the party furnishing the material used in the construction of the road had not been fully paid therefor by the contractor, and his failure to pay to the plaintiff the amount so owing to it was a clear breach of his covenant, found both in the bond and contract, to "pay all and every person furnishing materials * * * in and about the construction of said roadway." Consequently, from the unmistakable meaning of the language of the bond, if the contractor failed to pay such indebtedness, the defendant, as surety on the bond, became liable for its payment. And we find nothing said in that case by way of reference to the Southern Maryland Bank case that supports the plaintiff's contention in this case.

In *American Fidelity Company v. State,* 135 Md. 326, where there was a similar contract and bond, the suit was brought by Charles Cobb, Jr., to recover, from the surety on the bond, $2,531.25 advanced by him at the request of the contracting company for cement used in the construction of the road, and for which he took from the corporation by which the cement was furnished an assignment of the account. The principal defense was that the claim was paid by check for $3,600 issued by the contracting company to Mr. Cobb and intended to be applied so far as necessary to the payment of the cement bill, but which he in fact applied to the claims not included in the surety's liability.

In passing upon the prayers of the defendant asking for a directed verdict in its favor, because of the directions said to have been given the plaintiff to first pay out of said check the

assigned claim for the cement, the Court said "the evidence does not require the conclusion that the Carpenter Company (the contracting company) directed the plaintiff as to the application of the $3,600 check or that he previously agreed to apply such a payment primarily to the extinguishment of the cement claim," for which reason the Court affirmed the lower court's ruling upon those prayers which disposed of the defense so made, and which resulted in the affirmance of the judgment recovered by the plaintiff.

Thereafter, the Court, in further discussing said defense, upon which it had already passed, suggested what might have been the effect of the payment of the unassigned claims if other inferences could have been drawn from the facts of the case, and in doing so, cited the Southern Maryland Bank case in support of the statement then made which was not essential to the decision of the case; and we do not understand that it was the Court's intention thereby to lay down the rule by which it should thereafter be guided and controlled, that a surety on a road contractor's bond is liable for money loaned to the contractor and used by him, or it, in the payment of materials used in the construction of the road, under an agreement, either express or implied between him and the lender of the money, without the knowledge, at the time, of either the surety or the person furnishing the material, that it should be used for the specific purpose of paying such claim.

The Southern Maryland Bank case was cited in *Gill v. Mullan, supra,* but it, as the Court said, threw no light upon the case then before it, and the Court concluded its references thereto by stating the contention that was made in that case.

The question here presented, so far as we are able to discover, has never been directly passed upon by this Court, though it has been decided in a number of cases both in the federal and state courts.

In *United States v. D. L. Taylor and Company et al.,* 268 Fed. 635, the suit was brought in the United States District Court for the Eastern District of North Carolina against

D. L. Taylor and Company as principal and the Fidelity and Deposit Company of Maryland, as surety, on a bond executed pursuant to provisions of the statute of the United States, with the condition that the contractor, D. L. Taylor and Company, should perform the covenants and agreements contained in a contract made by it with the United States Government for the construction of a breakwater and shore connections at Cape Lookout, N. C., and that said contractors "should promptly make full payment to all persons supplying them labor and materials in the prosecution of the work provided for in said contract."

The suit was brought not only by those who had not been paid for labor and materials furnished by them, and used in the construction of the work, but also by one Connett, who had advanced money to the contractors to be, and which was, used in such work.

Connett, as stated by the court in its opinion, based his claim against the surety company "upon the contention that the amounts advanced were so advanced with the understanding with Seely (the contractor) that the amount was to be paid, and was in fact paid, to the laborers engaged in the prosecution of the work, and for amounts due for materials furnished Seely for the same purpose; that the transaction constituted an equitable assignment to him to the extent of the amounts advanced, and so applied, of the claims or payrolls of the laborers and the bills of the materialmen"; and as stated by the court, the surety company insisted "that Connett furnished neither labor nor materials within the meaning of the statute or the condition of the bond, and denies that there was an equitable assignment of the debts to the payment of which the money was applied."

In passing upon these respective contentions the court said:

"There is no suggestion of any promise or agreement on the part of laborers, or materialmen, or of Seely, to assign their debts to Connett * * *; hence the claim of Connett must be sustained, if at all, upon the theory that a court of equity

will create an equitable assignment because the money was advanced for the purpose and was in fact used in the payment of debts for which, if not paid, the surety company would have been liable.

"It is true that a court of equity will, upon sufficient evidence, establishing a clear intention of the parties to make an assignment of a chose in action, based upon a valuable consideration, treat the assignment as made, that is, effectuate the intention of the parties; but the court will do so only when the evidence is clear and free from uncertainty." *Pomeroy's Equity* (3d. Ed.), par. 1280.

The court thereafter said, quoting from Judge Gray, in *Smedley v. Speckman,* 157 Fed. 815, 85 C. C. A. 179, that "to make an equitable assignment, there should be such an actual or constructive appropriation of the subject-matter as to confer a complete and present right in the party meant to be provided for * * *. If the holder of the fund retain control over it, it is fatal to the claim of the assignee." *Christmas v. Russell,* 14 Wall. 69.

The court also quoted from Judge Gilbert, in *United States v. Rundle,* 107 Fed. 227, 46 C. C. A. 251, where a bank advanced money to the contractor to pay the wages of laborers employed on the work and materials used in the building, for which suit was brought against Rundle and his sureties on the bond, and the bank made the same contention, that the laborers and material men had assigned their claims to it, as to which claim Judge Gilbert said:

"There is nothing in the circumstances to show an assignment to the bank of any of these time checks for labor, or the orders for the payment of materialmen, or that it was the intention of the bank to take such assignments, or to become substituted to the rights of such payees, * * * nor can it be claimed that the law will raise a presumption of an assignment upon the facts in the case. It is true that an assignment may in some cases be made by parol, and that under certain circumstances the presumption will arise that an assignment was intended solely from the nature of the trans-

action. But in the circumstances of the present case we discover nothing upon which to rest such a presumption. The agreement was wholly between the contractor and the bank. The laborers and the materialmen were not parties to it. They took their checks and their orders to the bank as directed, and were there paid. The checks and orders were indorsed as evidences of payment, and for no other purpose, and the bank retained them as vouchers. In this there was no assignment. * * * If there was no assignment to the bank of any of the claims save those mentioned in the verdict, there could be for the unassigned claims no liability to the bank upon the bond; for the protection afforded by the bond was to such only as might supply the contractor with labor and materials in the prosecution of his work. It did not extend to a bank which might lend money for the purpose of paying for such work and materials."

The court held that it was manifest that Connett had not furnished labor or materials for the prosecution of the work and that he was not entitled to be subrogated against the bond, to the rights of the laborers or materialmen, whose claims were paid by the money advanced by him. See *Hardaway & Prowell v. National Surety Company,* 150 Fed. 465, 80 C. C. A. 283; *Carr Hardware Company v. Chicago Bonding and Surety Company,* 190 Iowa, 1320; *Fidelity and Guaranty Company v. Henderson* (Tex. Civ. App. 1923), 253 S. W. 835, and other cases in the appellant's brief.

In the case of *Puget Sound State Bank v. Gallucci,* 82 Wash. 445, 39 Ann. Cas. 767, cited by the appellee, in which the bond was held liable, the decision was made upon the special wording of the contract, which differed from the language of both the statute and the bond. In other cases, however, that followed in the same court, where the language of the contract was in keeping with the bond and the statute, the language of them being quite similar to that employed in our statute, the court held otherwise.

Upon sound reasoning and the authorities cited, we cannot escape the conclusion that the bond in this case should not

be held liable merely upon the allegations contained in the *narr.* that the money was loaned "upon the condition" that the contractors were to use it and did use it for paying the cement bill hereinbefore mentioned, when the agreement that it should be so used was made by the plaintiff with the contractors alone without the knowledge of the materialmen or the surety upon the bond.

If upon an agreement so made by the lender and contractor, the surety of the bond is to be held liable for the money so advanced to pay a cement bill, the surety would likewise be liable for any and all other money so borrowed to pay for other material and labor used upon the road, and holding this to be so, the contractor could, if he saw fit, obtain the money by such means to pay for each and every item for material and labor used in the road, and, at its completion, the money for all the labor and material would still be owing and the surety on the bond liable therefor, although he had no knowledge of any money being borrowed by the contractor to pay for such material and labor. This can hardly be the meaning of the language of the bond, nor could it have been the intention of the legislature in passing the act requiring the bond. By the method of payment suggested the surety would be deprived of all means of ascertaining the status or condition of the contractor in respect to his paying for labor and material as the work progressed, for if he inquired of the materialmen or laborers, he would be told by them that they had been paid and thus he would be lulled into a position of security, only to find, upon the completion of the work, when told by the various parties from whom money had been borrowed to pay for the labor and material furnished upon the job, that they had not been repaid therefor and that he was liable for all the money so borrowed; and this information would come too late for him to take over the work to protect himself against loss resulting from any inability of the contractors to prosecute it successfully.

The demurrer to the declaration, we think, should have been sustained and therefore the judgment will be reversed,

and as it is disclosed by the record that the declaration cannot be amended to meet the necessary requirements entitling the plaintiff to recover, a new trial will not be awarded.

> *Judgment reversed without a new trial, the appellee to pay the costs.*