# BALTIMORE CITY COURT.

Filed December 12, 1923.

THE CROWN CORK AND SEAL CO. OF BALTIMORE CITY

VS.

UNITED STATES FIDELITY AND GUARANTY COMPANY OF BALTIMORE.

*Arthur W. Machen, Jr.*, for plaintiff.
*Edgar Allan Poe* for defendant.

FRANK, J.—

This is a special case stated and submitted to the court for its opinion on the law, without formal pleadings, pursuant to Sections 44 and 55 of Article 75 of Bagby's Annotated Code.

It involves the construction of what is called a schedule bond issue by defendant to the plaintiff, whereby the defendant guaranteed to pay to the plaintiff such pecuniary loss as the plaintiff shall sustain, occasioned by any act or acts of fraud, dishonesty, forgery, theft, larceny, embezzlement, wrongful abstraction or misapplication or misappropriation, or any criminal act by any employee listed thereunder and continuing in the amounts named until the termination of the insurance. A certain John Doe was listed under said policy as cashier for the plaintiff with a liability upon the defendant in the amount of $20,000 for the period from January 20, 1919, to June 1, 1919. He was similarly listed on June 1, 1919, for the year ending June 1, 1920, in the same amount of $20,000. On March 15, 1920, the amount for which Doe was bonded was increased to $25,000 and the insurance was continued in said amount to June 1, 1922. However, on March 1, 1922, the amount of insurance applicable to Doe was reduced from $25,000 to $10,000 and insurance in the amount of $10,000 was duly continued until June 1, 1923. All of this insurance and the changes therein were agreed to by the respective parties and all premiums due were paid and accepted. No question is raised as to the full compliance by the plaintiff with all the requirements of the policy and all papers executed and delivered in connection therewith were upon forms prepared and provided by the defendant.

On December 14, 1922, the plaintiff discovered a shortage in the accounts of said John Doe as cashier and notice was given to the defendant as prescribed by the policy. A detailed claim and proof of loss was duly filed by the plaintiff with the defendant. An audit thereafter made shows a total loss of $27,539.29 sustained by the plaintiff from the embezzlement and defalcation of John Doe between January 20, 1919, and December 14, 1922. Of this $13,079.82 was sustained prior to March 1, 1922, and between May 4, 1921, and that date, and the balance of $14,551.13 was sustained between March 1, 1922, and December 14, 1922. There seems to be some slight mistake in the figures as agreed upon, but it is of no importance to the decision of the case.

The defendant admitted its liability for the amount of $13,079.82 embezzled prior to March 1, 1922, at which time the limit of its liability was $25,000, and paid that amount to, and it was accepted without prejudice by the plaintiff.

The plaintiff claims the additional sum of $10,000, that being the penalty of the bond as respects Doe during the period in which the remaining $14,-551.13 was embezzled by him. The defendant denies any further liability. The determination of the issue thus presented depends upon the true meaning of the language of the bond.

The pertinent language, in addition to that above quoted, is to be found in Proviso 1, it being understood that Doe was not included in the first list attached to the bond, but that his name appeared on subsequent lists, as above indicated. This fact has no bearing upon the question involved in this case, but is stated solely for the purpose of showing the application of the language of the proviso, which is as follows:

"1. On application, other employes may be added hereto from time to time by the insurer issuing an acceptance in writing, stating the amount and the date added, and this insurance on any employe may be increased or decreased by the insurer without impairing the continuity hereof, provided the insurer's aggregate liability under all its bonds and engagements on any one employe shall not exceed the largest bond or engagement on such employe."

The natural meaning of the language of the bond quoted at the beginning of this opinion taken together with that of Proviso 1, just recited, would seem to be this:

"The defendant will pay to the plaintiff such pecuniary loss as the plaintiff shall sustain by the dishonesty of any employe listed during the period commencing upon the date each is listed, and continuing in the amounts named until the termination of the bond; the insurance of any employe may be increased or decreased without impairing the continuity of the bond, but the defendant's aggregate liability under all its obligations on any one employe shall not exceed the largest obligation on such employe."

So interpreted the defendant is liable for the amount of any defalcation in each period, not exceeding the limit assumed for that period, but the aggregate liability for all periods must not exceed the largest obligation for any single period, during which the employe is listed and during the life of the bond. This seems to me to be the natural meaning of the language used.

I have reached this conclusion without resorting to the well established rule of construction applicable to contracts of insurance that in case of ambiguity, that construction of the policy will be adopted which is most favorable to the insured. The language employed is that of the company, and it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against it.

Mutual Life Ins. Co. vs. Hurni Pack Co., U. S. Sup. Ct. decided November 12, 1923. Adv. Ops. 1923-24, pp. 45 at 46; Amer. Fidelity Co. vs. State, 128 Md. 50, 56; So. Md. Bank vs. Natal. Surety Co., 126 Md. 290, 293.

While the precise point involved in this case does not seem to have been heretofore adjudicated (counsel for both sides agreeing that it is a case of first impression), the weight of authority seems to hold that the renewals of a fidelity policy or bond constitute separate and distinct contracts for the respective periods of the renewals, unless it appears to be the intention of the parties, as evidenced by the provisions thereof, that such policy or bond and the renewals shall constitute one continuous contract.

25 C. J., p. 1109, Sec. 16.

The prevailing rule is that the insurer's liability is not limited to the amount named in the original fidelity contract or in any renewal, but that there is a liability for the amount fixed by such original contract for a loss occurring during its life and likewise a liability for the amount fixed in any renewal occurring during its life.

25 C. J., p. 1110 and see cases cited in notes on pages 1109 and 1110.

Of course, this rule would yield to a contrary intention expressed in the contracts, but such an intention does not appear in the bond in this case, and the schedules and acceptances filed thereunder. Indeed, in the form of notification of changes in list of employes covered under the Schedule Bond and the acceptance thereof by the defendant the significant language of Proviso 1, of the Bond is repeated, "It being expressly understood and agreed that the company's aggregate liability under all its bonds and engagements on any employe or employes shall not exceed the largest bond or engagement on said employe or employes." This language

must mean that the defendant is to be liable for any defalcation during the period of each listing not exceeding the amount designated for that period, but that its "aggregate" liability, that is, the sum of its liabilities in several periods, shall not exceed the largest liability assumed upon the particular employe.

For the period extending from March 1, 1922, to December 14, 1922, the amount of Doe's defalcation was $14,551.13. During that period the limit of defendant's liability was $10,000. The defendant is accordingly liable to the plaintiff in the sum of $10,000 with interest from the fifth day of April, 1923.

In accordance with the terms of the submission, a judgment will be entered in favor of the plaintiff for $10,355.