Faurote *et al. v.* The State, *ex rel.* Gordon.

Filed April 22, 1887.

---

No. 12,437.

FAUROTE ET AL. *v.* THE STATE, EX REL. GORDON.

| 110 | 463 |
|-----|-----|
| 141 | 526 |
| 110 | 463 |
| 167 | 203 |

BOND.—*Of Contractor for County Work.—Gravel Road.—Defects in Bond.— Suggestion of in Complaint.—Extent of Recovery.*—A bond given by a contractor for the construction of a gravel road, being taken in pursuance of a public statute, is an official bond and is subject to the provisions of section 1221, R. S. 1881; and in an action thereon, defects therein may be suggested in the complaint and a recovery had to the same· extent as if the bond was a perfect statutory one in terms.

SAME.—*Liability of Sureties in Contractor's Bond.—Claims Against Sub-Contractor.*—The sureties in a bond given under section 4246, R. S. 1881, to· secure the performance of a contract by their principal to construct a gravel road, while liable in an action on the bond for debts incurred by the contractor in the prosecution of the work, are not liable for· debts incurred by a sub-contractor.

From the Henry Circuit Court.

*J. A. New* and *J. W. Jones,* for appellants.

*D. S. Morgan* and *H. E. Barrett,* for appellee.

MITCHELL, J.—On the 30th day of July, 1883, Francis·

M. Faurote and Lewis L. Brown, as principals, and W. H. Lewis, D. M. Brown and J. H. Cranor, as sureties, executed their joint bond, in the penal sum of five thousand dollars, payable to the board of commissioners of Rush county. The bond recites that the principals therein named had been awarded the contract for the construction of a certain gravel road in Rush county, and that they had entered into a written agreement with the engineer and superintendent, appointed by the board, to complete the work, according to certain plans and specifications, within a specified time. The bond was to be void if the work was completed according to the contract; otherwise to be in full force.

This was a suit upon the bond to recover for work and labor alleged to have been performed for the contractors.

The complaint alleged that the board of commissioners of Rush county, acting in pursuance of law, had ordered the construction of the gravel road described in the bond, and being about to authorize the engineer and superintendent named to enter into a written contract with Faurote & Brown, for the construction of the work, that the bond was thereupon executed, a copy of which is exhibited with the complaint.

It is alleged that owing to a mistake, the bond was made payable to the board of commissioners, instead of to the State of Indiana, and that it was not in terms conditioned, as the law required, that the principals therein named should promptly pay all debts incurred in the prosecution of the work, for labor, material, board of laborers, etc.

The complaint avers that the contractors, while executing the work, became indebted to the relators for work and labor, payment of which had been duly demanded and refused.

The first objection made to the complaint is, that it does not aver in terms that Faurote & Brown ever entered into a contract with any proper person to construct the gravel road.

It is averred in the complaint that the commissioners of Rush county, being about to authorize Thomas J. Newkirk,

·who had been appointed engineer and superintendent of the ¬work, to enter into a contract for the construction of the work with the principals named therein, the bond in suit, a ·copy of which is filed with the complaint, was executed. It .appears from the face of the bond, that the consideration upon which it was executed was, that Faurote & Brown had been awarded the contract, and had entered into a written agreement for the construction of the gravel road. Having proceeded, as the complaint avers they did, to construct the gravel road, after the bond was executed, it fairly .appears from the complaint and the bond which is properly a part of it, that the contract for the construction of the gravel road had been, or was about to be, let to Faurote & Brown, at the time the bond was executed, and that they constructed the gravel road under the contract.

It is argued moreover, that the bond sued on was executed in pursuance of section 5095, R. S. 1881, which provides that the successful bidder for a gravel road contract shall give security for the performance of his contract. Hence it is said that section 4246 has no application to the case, and the bond could not be brought within the terms of the statute by alleging an omission in the conditions of the writing. This latter section requires that boards of commissioners before entertaining any proposition for the construction of a ·county work, shall require the bidder to enter into a bond payable to the State of Indiana, with at least two resident freehold sureties, which bond shall guarantee the faithful performance of the work in case it is awarded to the bidder, ·and that the contractor shall promptly pay all debts incurred by him in the prosecution of the work, including materials furnished and for boarding laborers. Section 4246 is a general provision, and applies to all bonds taken in connection with contracts for public works, which boards of commissioners are authorized to make.

Section 5095, found in the act concerning free turnpike

roads, requires that a bidder for the construction of any part of such road shall give reasonable security for the proper performance of his contract. The other section referred to prescribes specifically the character of all bonds to be taken, by county commissioners upon letting contracts for the construction of county work. To this effect are the rulings in Dewey v. State, ex rel., 91 Ind. 173, and State, ex rel., v. Sullivan, 74 Ind. 121.

The bond, having been taken in pursuance of a public statute, falls under the description of an official bond, and is subject to the provisions of section 1221, R. S. 1881. Murfree Official Bonds, section 36.

It was, therefore, proper that the defects in the bond, growing out of the omissions referred to, should be suggested in the complaint. When the defects were so suggested, the bond could be recovered on, to the same extent as if it had been in all respects a perfect statutory bond in terms. Opp v. TenEyck, 99 Ind. 345, and cases cited.

One of the answers to which the court below sustained a demurrer, set up as a defence on behalf of the sureties, that after the contract was let, and the bond executed, Faurote & Brown, without the knowledge or consent of the sureties, sublet the work contracted for to one Cooney, and that the work and labor sued for was performed for the latter, and not under the employment of nor for the principals in the bond.

The appellants contend that because their principals sublet the contract, and because the work was performed for the sub-contractor, they are not liable on the bond.

The case of McCluskey v. Cromwell, 11 N. Y. 593, very fully supports the position contended for on behalf of the sureties. That was a case which grew out of a contract made by the canal commissioners of the State of New York, for the construction of certain locks on the Black River Canal. The statute of New York required that the contractor should give bond for the payment by the latter of the wages of

each and every laborer employed by him or his agents in the construction of the work. A contract and bond were executed accordingly. The contract expressly stipulated that the work was to be done by the contractor himself, and by workmen under his supervision and control, and not by a sub-contractor. Notwithstanding this stipulation, the contractor sublet a part of the work, without the consent of the officers of the State. In a suit on the bond by persons who performed labor for the sub-contractor, it was held that the sureties were not liable. The reasoning of the learned judge who delivered the judgment of the court in that case, seems to be conclusive.

The provision of section 4246 is, that the bond of a contractor, for the construction of any county work, shall guarantee the faithful performance of the work, and that the contractor "shall promptly pay all debts incurred by him in the prosecution of such work, including labor, materials furnished, and for boarding the laborers thereon."

Section 4247 authorizes "any laborer and material-man, or person furnishing board to said contractor, * * * and having a claim against such contractor," to bring suit against the contractor and his bondsmen.

These provisions of the statute became part of the bond, giving to it the same force and effect as if they had been written therein. They constitute the contract upon which the sureties have a right to stand, and by which their liability is to be determined. By this contract the sureties guaranteed that the contractor should promptly pay all debts incurred by him, and it gave to any laborer, material-man, or person furnishing board to the contractor, and having a claim against him therefor, a right of action on the bond.

The sureties did not, however, engage to become liable for debts incurred by a sub-contractor, nor did they agree that any person having a claim against a sub-contractor might maintain an action against them on the bond. As a general principle, in the absence of legislation, or of express agree-

ment, there is no liability on the part of contractors to respond to parties employed by sub-contractors.  *Wells* v. *Williams*, 39 Barb. 567.

The case last cited was an action brought by the employees of a sub-contractor, to recover from the contractor, who had in his hands money due the sub-contractor.  It was held, that inasmuch as there was no privity of contract between the contractor and the employees, and no law making the former liable for the wages of the latter, the action could not be maintained.

Since there is no statute imposing liability on the contractor for laborers hired by a sub-contractor, we can discover no principle which would authorize the court, in the absence of any charge of fraud, bad faith or concealment, to extend the obligation of the bond and the liability of the sureties thereon beyond the terms of the statute which entered into and became a part of the bond.

The statute which regulates the manner of contracting for the construction of court-houses and other public works for counties, does not in terms forbid subletting parts or the whole of the work, nor does it prescribe the instrumentalities which the contractor must employ in order to execute his undertaking.  It may have been that the Legislature supposed it impracticable to do so.  It may have been thought, that in the construction of a work of magnitude, the subletting of such parts as pertained to different handicrafts or trades might become a necessity, and it may have been supposed that it would impose an unnecessary burden to require a contractor and his sureties to answer on his bond for the liabilities of sub-contractors wherever and to whomsoever such liabilities might be incurred.  At all events, subletting was not forbidden, nor did the statute provide that the contractor and his sureties should become liable on their bond for the liabilities of sub-contractors to their employees.  It is not allowable, therefore, that the courts should extend the operation of the statute so as to correct supposed omissions or

defects in legislation, or add to the terms of the contracts of parties by construction, in order to meet the emergency of a particular case.

Our conclusion is that the court erred in sustaining the demurrer to the third paragraph of the answer. The demurrer to the fifth paragraph was properly sustained.

The judgment is reversed, with costs.

