THE AMERICAN FIDELITY COMPANY OF MONT-
PELIER, VERMONT, A FOREIGN CORPORATION,

*vs.*

THE STATE OF MARYLAND, FOR THE USE OF THE
SHORT & WALLS LUMBER COMPANY,
A CORPORATION.

*Statutes: amendments; original statute invalid. Sureties: cor-
porate; not favored by the law. Contracts for the benefit
of third parties: rights under—. Bonds of public con-
tractors: rights of laborers. State Roads Law:
chapter 218 of the Acts of 1910.*

An amendatory statute is not invalid, merely because of the
fact that the statute it purports to amend has been previously
amended, or has been held invalid.                    ‘ p. 55

Section 32D of Chapter 141 of the Acts of 1908 (creating
the State Roads Commission, and which became section 32D of
Article 91 of the Code of 1904), was repealed and re-enacted
with amendments (adding an additional member of said com-
mission), by Chapter 218 of the Acts of 1910; by Chapter 721
of the Acts of 1910, section 32D of Article 91 of the Code, as
enacted by Chapter 141 of the Acts of 1908, was repealed and
re-enacted with amendments providing that the bonds of the
road contractors should bind them to pay all just debts for
labor and material incurred in the construction, etc., of the
roads contracted for: *Held,* that said Chapter 721 was opera-
tive and effective, although the said section 32D had been
repealed by Chapter 218 of the Acts of 1910, before it was
re-enacted with amendments by said Ch. 218.        pp. 54-55

Since corporate bonding companies are organized to become sureties on bonds for profit, the doctrine that a surety is a favorite of the law, and that a claim against surety is *strictissimi juris,* is greatly minimized as to them; their business is that of insurers, and their liability is greatly extended beyond that to which sureties were formerly bound.        p. 56

A third person for whose benefit others make a contract may in certain cases recover upon it against a party to the contract who defaults in performing the beneficial condition.        p. 58

Where a contractor's bond is given, not only for the protection of the State under the contract, but also for the protection of the laborers and material men, the latter, on a proper case, may maintain an action under it, irrespective of whether the right is given them by the express language of the statute and bond, or not.        p. 58

Under Chapter 218 of the Acts of 1910, amending the law as to the bonds to be required of contractors who obligate themselves to build roads under the State Roads Law, laborers and material men may sue on the bond in their own names for sums due them by the contractor in building or improving such roads.        p. 59

*Decided March 2nd, 1916.*

Appeal from the Baltimore City Court. (GORTER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*George Moore Brady* (with whom was *William Milnes Maloy, Robert Biggs* and *J. Morfit Mullen* on the brief), for the appellant.

*Joseph N. Ulman* (with whom were *B. Bayley Chapman, Frank, Emory & Beeuwkes, Wm. J. O'Brien, Jr., Wm. J. Tewes* and *Harman, Knapp, Ulman & Tucker* on the brief), for the appellees.

CONSTABLE, J., delivered the opinion of the Court.

This appeal is from a judgment for a small amount recovered by the appellee against the appellant, which was the surety on a bond given by the Carpenter Company, a road constructing concern, to the State of Maryland.

By Chapter 721 (p. 298) of the Acts of Assembly of 1910 it is provided among other things that: "In all cases where the contract for work and materials shall be given out after competitive bidding, the successful bidder shall promptly execute a formal contract to be approved as to its form, terms and conditions by said Commission, and shall also execute and deliver to said Commission a good and sufficient bond to be approved by said Commission to the State of Maryland in not less than the amount of the contract price. In no case shall any such bond be approved or accepted unless the *obligators* bind themslves therein to the payment of all just debts for labor and materials incurred by the bidder in the construction and improvement of the road contracted for." In pursuance of the provisions of this Act of Assembly the State Roads Commission, prior to granting the contract, out of which this action arose, inserted the following condition in the advertisement for bids: "A bond will be required for the faithful performance of the contract and the prompt payment in full of all just debts for labor and material incurred in the construction of improvements herein contemplated in such sum as shall be fixed by the Commission after the bids are opened; said sum shall not be less than the amount of the contract, the surety to be an incorporated surety company satisfactory to said Commission."

The Carpenter Company being the successful bidder, entered into a formal contract for the construction of about six

miles of State Road in Cecil County, and executed a bond with the appellant as surety in the sum of $56,155.77, one of the conditions of which was that it should "save and keep harmless the State of Maryland against and from all losses to it, from any cause whatever, including patent infringements, in the matter of constructing said section of State highway, and shall promptly pay in full all just debts for labor and materials incurred by such contractor in the construction and improvement of the road contracted for, then this obligation to be void, and otherwise to be and remain in full force and virtue in law."

The Carpenter Company before the completion of the road, became insolvent and was adjudicated a bankrupt. The Short and Walls Lumber Company was a creditor of the Carpenter Company on account of materials furnished to them in the construction of the road, and brought this suit to recover for that claim.

The appellant, after a demurrer to the declaration had been overruled, refused to plead over, and judgment was entered against it by default for want of a plea.

There are two only contentions made by the appellant for a reversal of the judgment: (1) The invalidity of the Act creating the obligation here sued on. (2) The Act, if valid, gave no right of action to a creditor of the contractor against the surety. The argument against the validity of the Act is based upon the fact that at the time Chapter 721 of the Acts of 1910 became a law, April 13th, 1910, the Act which it purported to amend had two days previously been repealed by an Act of the same Legislature, namely: By Chapter 218 of the Acts of 1910, approved April 11th, 1910.

A review of the Acts of Assembly pertaining to the subject of State roads building, shows that the State Roads Commission was created by Chapter 141 of the Acts of 1908. By 32D of that Act, which became Section 32D of Article 91 of the Code of 1904, it was provided that: "In all cases where the contract for work and materials shall be given out

after competitive bidding the successful bidder shall prompt-
ly execute a formal contract to be approved as to its form,
terms and conditions by said Commission, and shall also exe-
cute and deliver to said Commission a good and sufficient
bond to be approved by said Commission to the State of Mary-
land in not less than the amount of the contract price."

Chapter 218 of the Acts of 1910 repealed and re-enacted
with amendments section 32D by adding to the Acts of 1908
provision for an additional member of the State Roads Com-
mission, but re-enacting section 32D of the Acts of 1908.

Chapter 721 approved April 13th, 1910, provided: "Sec-
tion 1.  Be it enacted by the General Assembly of Maryland,
That Section 32D of Article 91 of the Code of Public General
Laws, entitled 'Surveyor and State Survey,' sub-title 'Public
Roads,' as enacted by Chapter 141 of the Acts of 1908, be
repealed and re-enacted with amendments so as to read as
follows," and therein provided by 32D as we have quoted
above that no bond should be accepted unless the obligors
bound themselves therein to the payment of all just debts
for labor and material incurred by the bidder in the con-
struction and improvement of the road contracted for.  It is
claimed, therefore, that this section by this enactment is of
no validity because 32D as enacted by Chapter 141 of the
Acts of 1908 was not then in existence, having been repealed
by Chapter 218 of the Acts of 1910.

In a situation of this character the authorities are not
unanimous.  The appellant cited in support of its contention
numerous cases from Indiana, and one from Illinois.  These
cases clearly bear out that contention.  The greater weight
of authority, however, is to the contrary.  In 36 *Cyc.* 1055-
1056, it is said: "In many cases it is held that an amend-
ment to be valid must not relate to a statute which has been
repealed or declared unconstitutional, and that where an
entire act is void there is nothing to amend; and thus it is
held that an amendatory statute which attempts to amend a
section which has already been amended and repealed by im-

plication is void. But in the absence of constitutional pro-
hibition the better rule has been held to be that an amenda-
tory statute will be upheld, although it purports to amend
a statute already amended or which for any reason has been
declared invalid; and that a statute amended and not re-
pealed may be amended; and a statute amending a statute
which has already been superseded by an amendatory statute
is valid, where it was the intention of the Legislature to
amend the amendatory statute, and not the amended statute,
and a statute purporting to amend a repealed or void statute
is valid where the provisions of the new statute are independ-
ent and complete in themselves." And cited cases from a
great number of States and also the Federal Courts.

*Sutherland on Statutory Construction,* section 233 says:
"There is a conflict of authority as to whether a section which
has been repealed can be amended. The question usually
arises where a section of an act is amended 'to read as fol-
lows,' and is then again amended in the same manner and by
the same description, ignoring the first amendment. Most
of the older and some of the more recent cases hold that such
an amendatory act, or the amendment of a repealed act is a
nullity * * *. A repeal by implication is said to stand upon
the same footing in this respect as a direct or express repeal.
'While there is some conflict of opinion on the subject,' says
the United States Court of Appeals, 'the decided weight of
authority, and the better opinion is that an amendatory stat-
ute is not invalid, though it purports to amend a statute
which had previously been amended or for any reason held
invalid.' This view, we believe, is sustained by the decisions.
* * *

"A New York Act of 1883, amended section 16 of an
Act of 1856, relating to schools, 'so as to read as follows.'
In 1864 the Legislature passed an Act to revise and con-
solidate the laws relating to public instruction, which re-
pealed all inconsistent laws. It was claimed that the Act of
1864 repealed the Act of 1856 and that the amendment was

void.  The Court was of a different opinion as to the repeal,
but held that even if the Act of 1856 was repealed, as
claimed, the amendatory Act of 1883 was nevertheless valid,
and gave their reasons as follows:  'The enactment of this
law is put in the form of an amendment of a law which was
standing upon the statute books, and whether that earlier
law, by force of subsequent legislation, had become inopera-
tive, is wholly immaterial.  The only question is, has the
Legislature, in the enactment complained of, expressed its
intention intelligibly, and provided fully upon the subject.
If it has, then its act is valid and must be upheld.  The Act
of 1883 contains all that is provided for in the particular
section of the Act of 1856, and gives full power to the boards
of supervisors with respect to the formation of school com-
missioners' districts.  A law thus explicit and complete may
not be disregarded or invalidated because of a possible mis-
take of the Legislature with respect to the existence of the
statute in amendment of which the act is passed.  It is an
enactment of a law in any view.' "

We think in view of the practically conceded weight of
authority, and from the further fact that all of these Acts
are not repealed in themselves but repealed and re-enacted
with amendments that the better reason is to declare the Act
valid.

This brings us to the consideration of the question of
whether or not the surety on the bond can be made liable in
an action by the creditor of the contractor for labor and
materials.  Since the organization of corporate bonding
companies, whose business it is to become surety upon bonds
for a profit, the old doctrine that a surety is a favorite of the
law, and that a claim against him is *strictissimi juris* has
been very greatly minimized.  And the business of these cor-
porations is in all essentials practically that of an insurer
and the liability upon their bonds has been very greatly ex-
tended beyond that to which sureties were formerly bound;
*Smith* v. *Turner*, 101 Md. 584; *Aetna Indem. Co.* v. *Waters*,

110 Md. 699; *So. Md. Bank* v. *Nat'l. Surety Co.*, 126 Md. 290.

The last cited case was one in which the same statute we are here considering and a similar bond were involved, although the question raised had no similarity to those raised here.    The suit was in the name of the State for the use of an alleged creditor of a contractor, and it was not therein contended, but admitted, that the creditor had a right of action, and this Court, therefore, was not called upon to consider that question.

Chapter 721 of the Acts of 1910 was the first Act in which mention was made that the obligors should bind themselves to the payment of all just debts for labor and material incurred by the bidder in the construction and improvement of the road contracted for, and it is clear to us that the manifest object of the Act in addition to assuring the State that the road would be built according to the plans and specifications was to protect all those who furnished labor and materials in the construction of the road.    There, no doubt, was an intention of remedying a condition that had existed in certain sections of the State, where contractors had failed to comply with their contracts, and where persons who had provided and supplied work and materials had lost heavily by the insolvency of certain contractors.    This was recognized by this Court in *Southern Md. Bank* v. *Nat'l. Surety Co., supra,* where it was said by JUDGE STOCKBRIDGE in delivering the opinion of this Court: "It will have been observed that the condition of the bond covered two entirely distinct and severable matters; the one to save harmless the State from the consequences of certain acts on the part of the contractor, the other to insure the prompt payment of all just debts of the contractor for labor and materials, in the construction and improvement of the road contracted for."

Should the fact that neither the Act nor the bond expressly state that the laborers and material men should have a right of action, or how and where their suits should be brought, de-

prive creditors such as this appellee from his right of action?
In a note to *Knight* v. *Castle*, 27 L. R. A. (N. S.) 573, the
right of the material men and laborers to maintain an action
on a contractor's bond is discussed thoroughly and at length,
with cases cited to support the text. It is there said: "An
ancient general principle denies an action for the breach of
a contract to one who neither made it nor has succeeded to
the interest of the one who did make it, notwithstanding he
had sustained a damage by the breach, or would have been
substantially benefited by the performance of such contract.
In later times that general principle became subject to an ex-
ception now widely recognized and well established, viz., that
a third person for whose benefit others make a contract may
in certain circumstances recover upon it against the party to
it who defaults in performing the beneficial covenant. The
courts have had occasion to act so frequently upon this excep-
tion that it has acquired the force of an independent rule of
law. Cases arising upon beneficial contracts which have
required the courts to consider and apply this exception-gen-
erated rule have been very numerous and exceedingly varied
in character, and the judicial determinations made in them
have been discordant and conflicting to a high degree. The
cases in which a sub-contractor, laborer or materialman has
sought recovery upon the contractor's bond or against his
sureties, upon the ground that the obligation was entered
into for his benefit, constitute a large and important group
among the multitude. In all of them the rule has been re-
ferred to and in some of them it has been applied. In none
has it been denied that the rule applies to this class of cases,
but only that particular cases do not fall within its opera-
tion." And it is clear from a study of the cases there cited,
and from others that the weight of authority that since the
contractor's bond is given not only for the protection of the
State under the contract, but equally for the protection of
the laborers and the materialmen, that such have a right of
action irrespective of whether the express language of the
bond or Act gives it to them.

In our opinion the Legislature could have had no other reason in adding to the Act of 1908, by the Act of 1910, the requirement of the bond for labor and material, unless they had intended thereby to create a right of action for them. For under the Act of 1908 so far as the State was concerned it was already protected by the requirement for a bond for the faithful performance of the contract between it and the contractor; and another reason that occurs to us, that could account for this intention on the part of the Legislature, is that they reognized that since this was a State work, the labor and materialmen could acquire no protection against insolvent contractors by the lien laws of this State.

Upon this question we have already practically announced the stand of this Court. In *Southern Md. Bank* v. *Nat'l. Surety Co., supra,* we said that we agreed with the reasoning and conclusion of an opinion that had been delivered by JUDGE BRISCOE of this Court, in circuit, in which he had held a surety company, upon a bond substantially similar to the one in this case, liable for an indebtedness of a contractor.

As to the right of the creditor to bring his action in the name of the State, we do not think it necessary to discuss further than to say that *Seigman v. Hoffacker,* 57 Md. 321, is ample authority for so doing. We will therefore affirm the judgment.

*Judgment affirmed, with costs to the appellee.*