STATE OF MARYLAND, FOR THE USE OF GWYNNS FALLS QUARRY Co., *vs.* THE NATIONAL SURETY COMPANY.

*State Road Contractor's Bond—Construction—Steam Shovel—Labor and Materials—Rent and Depreciation.*

That a road contractor's bond was conditioned on the payment by the contractor for materials and labor furnished in or about the construction of the road did not involve a liability on the bond for the rent and depreciation of a steam shovel, leased to a sub-contractor as part of his regular business equipment, and for the cost of its redelivery to its owner, these not being materials or labor within the meaning of the bond.   p. 225

That a proportion of the premium on the bond was charged to the sub-contractor in its account with the principal contractor is not ground for extending the liability of the latter's bond by enlarging the terms in which it is expressed.     p. 225

*Decided April 17th, 1925.*

Appeal from the Baltimore City Court (STANTON, J.).

Action by the State of Maryland, for the use of the Gwynns Falls Quarry Company against the National Surety Company. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Lewis W. Lake* and *Victor Wilson,* for the appellant.

*Joseph France,* with whom were *Venable, Baetjer & Howard* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

A firm of sub-contractors, employed for excavation work in the construction of a state highway, used for that purpose a steam shovel which the firm had leased from the appellant, and in this suit by the latter, on the principal contractor's statutory bond, the question is whether the appellee, as surety on the bond, is liable to the appellant for the rent which the sub-contractors agreed but failed to pay for the use of the steam shovel, and whether the surety is liable also for claims on account of the deterioration of the machine during the period of its operation on the highway, and for the cost of its reconveyance to the point of its delivery under the lease. The decision of the lower court was that the suit could not be maintained.

The contractor's bond, which the appellee executed as surety, includes a condition that the contractor shall "pay all and every person furnishing material or performing labor in and about the construction of said roadway, all and every sum or sums of money due him, them or any of them for such labor and materials for which the contractor is liable." This condition was incorporated in the bond in pursuance of the Code provision (article 91, section 36), that the bond required to be given by a successful bidder for

state road construction work should not be accepted unless the obligors should "bind themselves therein to the payment of all just debts for the labor and materials incurred by the bidder in the construction and improvement of the road contracted for."

As compensation for the excavation work which they agreed to do, the subcontractors were to be paid a certain price per cubic yard. The contractor made weekly payments to the sub-contractors on that basis, and claims to have fully paid for the work. A proportionate part of the premium on the contractor's bond was charged by him to the sub-contractors' account. It was understood between the contractor and sub-contractors that a steam shovel was to be used for the excavation work, but there was no agreement between the contractor and the appellant corporation that its steam shovel was to be used. It had, in fact, been leased to the sub-contractors for uses not connected with the highway to which the bond in question refers. During the progress of the road work, which continued about four months, the sub-contractors paid the appellant three hundred dollars as the stipulated amount of a month's rent for the steam shovel, but the payment was credited on the rental due for the period preceding the one with which this suit is concerned. Before the work was finished the appellant offered to sell the steam shovel to the sub-contractors and to accept the overdue rent as part payment, but this option was not exercised.

In order to sustain the appellant's claim in this suit we should have to hold that his charges against the subcontractors, on account of the rental, depreciation and redelivery of the steam shovel were for labor or material used in the construction of the roadway mentioned in the bond. It has been argued that the suit is not maintainable because it is not brought for the recovery of a debt "for which the contractor is liable," or which he "incurred," within the terms and meaning of the bond and of the statute providing for its execution. But upon that theory a claim for labor or material unquestionably used in the construction of the road,

but procured by a subcontractor, might be denied the security of the bond simply because it had not been furnished at the principal contractor's direct request. The case presented by this record does not require a decision upon that point.

In *American Fidelity Co. v. State*, 128 Md. 50; *Southern Md. Bank v. National Surety Co.*, 126 Md. 290; *American Fidelity Co. v. State*, 135 Md. 326, and *New Amsterdam Casualty Co. v. State*, 147 Md. 554, various questions relating to road contractor's statutory bonds were considered, but the decisions in those cases do not reach the point of the present inquiry. There have been, however, decisions on analogous questions under the mechanics' lien law of this State. In *Basshor v. Balto. & O. R. R. Co.*, 65 Md. 99, it was held that machinery and appliances sold to a contractor, for crushing and carrying stone for the building of concrete bridges, were not materials within the purview of the provision in the mechanics' lien law that a lien was obtainable for materials furnished "for or about" such construction. "The machinery thus used," the court said, "is the plant of the contractor, and can in no sense be said to be materials furnished or used in building the bridges." In *Gill v. Mullan*, 140 Md. 1, it was held that oil and fuel used in the operation of a steam shovel, and its depreciation, did not constitute materials for the purposes of the mechanics' lien law. It is said in 18 R. C. L. 926: "As a general rule, one who rents or hires teams, tools or other appliances, to a contractor for use in erecting a building or other structure has, under mechanics' lien laws, no lien upon the building or structure for the rent or hire of the teams or appliances unless specifically authorized by statute." The case of *Basshor v. Balto. & O. R. R. Co.*, *supra*, is cited in support of a statement to the same general effect in 27 *Cyc.* 46.

The steam shovel leased by the appellant in this case was merely an implement utilized by the lessees in the work for which they were employed. It formed a part of their equipment for the business in which they were regularly engaged.

The monthly rent accruing to the appellant was payable regardless of the extent to which the steam shovel was actually used or of the place where it was operated.  The appellant's claim is obviously not for labor performed on the highway, since the work in which the leased machine was used on the road was done exclusively by the lessee, and we think it also clear that the use and depreciation of the steam shovel, and its transportation to the appellant, should not be regarded as materials furnished in the construction of the roadway, within the terms of the contractor's bond and of the statute by which it was prescribed.  This conclusion finds support in cases cited in notes to *Standard Boiler Works v. National Surety Co.* (Wash.) 43 L. R. A. (N. S.) 165; *Wood, Curtis & Co. v. El Dorado Lumber Co.*, 16 L. R. A. (N. S.) 585; *U. S. Rubber Co. v. Washington Eng. Co.* (Wash) L. R. A. 1915F, 951; and in *National Surety Co. v. United States*, 228 Fed. 577, L. R. A. 1917A, 336; *Southern Surety Co. v. Municipal Excavator Co.*, 61 Okla. 215, L. R. A. 1917B, 558.  In the case of *Multinomah County v. U. S. Fidelity and Guaranty Co.*, 87 Ore. 204, which the appellant cited, the bond was broader in its terms than the one by which our decision in this case is governed.

The fact that a proportion of the premium on the bond was charged to the sub-contractors in their account with the principal contractor is not a sufficient reason for extending the liability of the bond by enlarging the terms in which it is expressed.

The case was tried before the court below, sitting as a jury, and at the close of the trial it was ruled that no evidence legally sufficient to establish any liability to the plaintiff under the bond had been offered.  We agree with that conclusion.

*Judgment affirmed, with costs.*