# Richmond

## C. S. Luck & Sons, Inc., et als. v. Boatwright.

January 14, 1932.

Present, Campbell, C. J., and Holt, Epes and Browning, JJ.

The opinion states the case.

*J. F. Hall* and *Leith S. Bremner*, for the plaintiffs in error.

*T. E. Didlake* and *J. H. Rives, Jr.*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

For convenience the parties will be referred to in the position occupied by them in the court below. A. P. Heymond, defendant, acting for himself and for Luck and Sons, Inc., entered into a contract on May 31, 1928, with the State Road Commission of Maryland for the construction of a section of highway in that State and, as he was required to do, executed his bond with United States Fidelity and Guaranty Company, as surety, conditioned for its faithful performance. On June 14, 1928, he sublet to Daniel, Knighton and Company all grading, clearing and grubbing on that project.

Shortly thereafter and as a result of negotiations between Heymond, the contractor, Daniel, Knighton and Company, the subcontractor, and A. S. Boatwright, plaintiff, this subcontractor sublet to Boatwright the "hauling, delivery and distributing of the excavation" at a unit price of twenty cents a cubic yard.

After that contract had been in effect for a time it was on August 29, 1928, by consent, canceled and a new one was executed. Under it he did the same work in the same way but instead of being paid so much per cubic yard he was to be paid for services, etc., and equipment on a rental basis. He was not paid at all and has obtained a judgment against the contractor and his surety for $8,284.06, the correctness of which is challenged in this appeal. The defendant's claim is that nothing is due while the plaintiff is claiming a larger sum and has set up that claim in a cross assignment of error.

The subcontractor is insolvent and if the plaintiff is to be paid at all he must be paid by the principal contractor and his surety.

As we have seen, A. P. Heymond was the successful bidder for the construction of a certain section of highway in Alleghany county, Maryland. His bid was received and approved by the State Road Commission of Maryland, under whose supervision contracts of this character came. Statutory provision for this is made in article 91, section 30, of the Maryland Code of 1924, and reads as follows:

"In all cases where the contract for work and materials be given out after competitive bidding, the successful bidder shall promptly execute formal contract to be approved as to its form, terms and condition by said Commission, and shall also execute and deliver to said Commission a good and sufficient bond to be approved by said Commission to the State of Maryland not less than the amount of the contract price. In no case shall any such bond be

approved or accepted unless the obligators bind themselves therein to the payment of all just debts for labor and materials incurred by the bidder in the construction and improvement of the road contracted for."

From this it appears that the bond must contain certain minimum statutory requirements and be approved by the Commission.

The contractor did execute a bond which was approved and accepted. In it he bound himself to complete his contract "in a manner satisfactory to the State Roads Commission, complete the work contracted for, and shall save harmless the State of Maryland from any expense incurred through the failure of said contractor to complete the work as specified, or for any damages growing out of the carelessness of said contractor of his, their or its servants, or for any liability for payment of wages due or materials furnished said contractor; and shall well and truly pay all and every person furnishing material or performing labor in and about the construction of said roadway, all and every sum or sums of money due him, them or any of them for such labor and materials for which the contractor is liable."

In the case in judgment the contractor is by statute made liable for debts "incurred" by him while in his contract he promises to pay for labor and materials for which he is "liable." The statute and the bond are to be read together and measure the extent of his undertaking. *American Fidelity Co.* v. *State,* 128 Md. 50, 97 Atl. 12; *Aetna Casualty & Surety Co.* v. *Earle-Lansdell Co.,* 142 Va. 435, 129 S. E. 263, 130 S. E. 235; *Philip Carey Co.* v. *Maryland Casualty Co.,* 201 Iowa, 1063, 206 N. W. 808, 47 A. L. R. 495; *Franzen* v. *Southern Surety Co.,* 35 Wyo. 15, 246 Pac. 30, 46 A. L. R. 496.

Sureties for hire are not wards of court to be shielded from heedlessness or folly. They must abide by their contracts and pay everything which by fair intendment can be

charged against them. They act, not to accommodate others, but to promote their own interests and are to be judged accordingly.

■ "The rule that sureties deserve the special protection and consideration of courts has no application to sureties who become such for a consideration, and their contract of suretyship should be given such a construction as will effectuate the accomplishment of the real and expressed purpose for which it is given." *Fidelity, etc., Co.* v. *Mason,* 145 Va. 138, 133 S. E. 793, 795.

Of course if the principal contractor is not liable his surety is not, for it would be a solecism to hold that he is bound beyond his principal.

In recent years road building has developed to an unusual degree. Commonly it is done by contractors and in many instances by subcontractors also. From this a mass of litigation has come dealing with the liability of principal contractors for labor and material primarily contracted for by them and with like claims in the second degree growing out of dealings with subcontractors.

■ It is of course possible to frame statutes and contracts under which they work in such manner as to make them liable for all labor performed and all supplies and materials furnished from whatever source and through whatever agency they may come. This is usually done in general terms, though they sometimes descend into particulars and make the contractor expressly liable for the dealings of subcontractors and sometimes declare them to be his agents, but always liability turns upon the statute.

■ We are to determine if the plaintiff, whose contract was with and who worked for the subcontractor, can enforce his claim against the principal contractor and his surety.

In *Faurote* v. *State,* 110 Ind. 463, 11 N. E. 472, 475, it appears that Faurote and Lewis L. Brown, as principals,

with Lewis, D. M. Brown and Cranor as sureties, executed their bond to the board of commissioners of Rush county, Indiana.

This bond recites that its principals had been awarded a contract for the construction of a certain road and was to be void if that road was properly completed, otherwise to remain in full force and effect. These contractors sublet this undertaking to one Cooney, and the work and labor for which recovery was sought he did.

In section 4246, Rev. St. of Ind., 1881, it is provided that the bond of a contractor for the construction of any county work shall guarantee its faithful performance, and that he "shall promptly pay all debts incurred by him in the prosecution of such work, including labor, material furnished, and for the boarding of laborers thereon."

Section 4247 authorizes "any laborer and material man, or persons furnishing board to said contractor * * * and having a claim against such contractor therefor" to bring suit against the contractor and bondsman.

"By this contract the sureties guaranteed that the contractor should promptly pay all debts incurred by him, and it gave to any laborer, material man, or person furnishing board to the contractor, and having a claim against him therefor, a right of action on the bond. The sureties did not, however, engage to become liable for debts incurred by a subcontractor, nor did they agree that any person having a claim against a subcontractor might maintain an action against them on the bond.

\* \* \* \* \* \* \*

"Since there is no statute imposing liability on the contractor for laborers hired by a subcontractor, we can discover no principle which would authorize the court, in the absence of any charge of fraud, bad faith, or concealment, to extend the obligation of the bond, and the liability of the sureties thereon, beyond the terms of the statute which entered into

and became a part of the bond. The statute which regulates the manner of contracting for the construction of court-houses, and other public works for counties, does not in terms forbid subletting parts or the whole of the work, nor does it prescribe the instrumentalities which the contractor must employ, in order to execute his undertaking. It may have been that the legislature supposed it impracticable to do so. In the construction of a work of magnitude, it may have been thought that the subletting of such parts as pertained to different handicrafts or trades might be a necessity, and it may have been supposed that it would impose an unnecessary burden to require a contractor and his sureties to answer on his bond for the liability of subcontractors, wherever and to whomsoever such liabilities might be incurred. At all events, subletting was not forbidden, nor did the statute provide that the contractor and his sureties should become liable on their bond for the liabilities of such contractors to their employes. It is not allowable, therefore, that the courts should extend the operation of the statute, so as to correct supposed omissions or defects in legislation, or add to the terms of the contracts of parties by construction, in order to meet the emergency of a particular case." See *State* v. *Granite Co.*, 117 Ind. 476, 20 N. E. 437.

Said section 4246, Rev. St. 1881, afterwards became section 5592, Rev. St. 1894. It again commands the taking of a bond to guarantee the faithful performance of the work "and that the contractor shall promptly pay all debts incurred by him in the prosecution of such work, including labor, material furnished, and for board of laborers thereon." The Indiana court in *Swindle, et al.* v. *State, ex rel. Leak*, 15 Ind. App. 415, 44 N. E. 60, 61, adhered to its former judgments and said:

"Both the statute and the bond, itself, provide that it be given to secure the payment of the debts incurred by the

principal. The sureties do not propose to answer on the bond for each other's debts nor can they be required to do so."

The substance of that case is that one who works for a subcontractor could not in that capacity recover against the contractor or his surety.

*Miller* v. *State*, 35 Ind. App. 379, 74 N. E. 260, 261, is a case in which Miller and Rapp appear as principal contractors. They executed a bond with sureties conditioned to pay all debts incurred by them in the prosecution of their work. Sullivan was a subcontractor under them. Claims primarily against Sullivan were being pressed. The court said:

"The debts created by the furnishing of the supplies and the performance of the labor were the debts of Sullivan, and not of the original contractors. Under the contract of Sullivan with the original contractors, he cannot be regarded as thereby constituted their agent, with authority to bind the original contractors for the payment of such claims, as seems to be supposed by counsel for the appellee; and the evidence does not show that the relators furnished supplies and performed labor for the original contractor through Sullivan, acting or claiming to act as an agent. If there can be any recovery in this action upon the claims of the relators it must be had upon the bond of the appellants on which the action is founded, and, to authorize such recovery, the claims must be such as are contemplated in the obligation; that is, debts incurred by the principal obligors in the prosecution of the work, including labor, materials furnished, and boarding the laborers on the work. It was within the authority of the county Commissioners to accept such a bond, and we are not advised of any reason why the obligation should be regarded as extending further than its own terms, which do not include any debts except such as should be incurred by the principal obligors themselves."

Of course it was competent for the legislature to change this and it did afterwards do so as is shown by section 18 of the Highway Commission act of 1919, page 128, chapter 53, which provides that the bond shall be "conditioned upon the faithful performance of the work in accordance with the profile, plans and specifications therein set forth, and conditioned also upon the payment by the contractor and by all subcontractors for all labor performed or material furnished in the construction of the highway" and "for the payment by the contractor and all subsequent contractors for all indebtedness which may accrue to any person, firm or corporation on account of any labor performed or material furnished in the construction of such highway." Under this statute the right to recover for supplies furnished to subcontractor was sustained. *Federal Paving Co.* v. *Raschka*, 82 Ind. App. 416, 141 N. E. 644.

We have dealt with these Indiana decisions somewhat at length because the Maryland statute and the Indiana statute are very much alike and each speaks of the responsibility of the contractor for obligations "incurred" by him, but there is this difference to be remembered. The bonds in the Indiana cases do not seem to go beyond the statute and it was said that they could not. In the instant case the wording in the bond of obligations assumed is somewhat more flexible than that of the statute and as we shall see this was competent. The statute fixed minimum requirements only for obligations assumed. If the contractor and his surety promised more they cannot now be heard to complain.

By an act of Congress, approved August 13, 1894 (40 U. S. C. A. section 270), it is provided "that hereafter any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work, * * * shall be required, before commencing such work,

to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract."

A contract to erect a post office building was let to Stowell and Company with the American Surety Company as its surety upon the required bond. In the contract of suretyship it was provided that "now if said F. B. Stowell and Company * * * shall promptly make payment to all persons supplying them labor or material in the prosecution of the work contemplated by said contract, then this obligation to be void; otherwise to remain in full force and virtue."

Suit was brought by a plasterer who worked for a subcontractor on that building. It was held that there could be no recovery. The court, in the course of its opinion, said:

"It is obvious that the only obligation assumed by the surety is to pay to those persons such amounts as may be due them on account of labor performed or materials furnished to his principal in the event his principal makes default; that the surety is not liable for materials furnished for which his principal is not liable. There is no pretense in this case that the plaintiff furnished any materials to Stowell and Company or that the subcontractor to whom plaintiff sold his goods had any authority to bind them." *American Surety Co. of N. Y.* v. *United States to Use of Barrett*, 127 Ala. 394, 28 So. 664, 665.

In *United States* v. *Farley* (Cir. Ct.) 91 Fed. 474, it appears that Farley and Company contracted with the Federal Government to do certain work in the Mississippi river. For its proper performance they gave bond with security, conditioned for "promptly making full payment to all persons supply them with labor or materials in the prosecution of the work provided for in said contract." Farley and Company

contracted with one Cornish for certain cut stone. It was furnished and paid for by Farley and Company but Cornish did not pay his men, who thereupon sued the principal contractor and his surety. The court held that the claimants there did not come within the terms of the bond and had furnished Farley and Company nothing. The court said that to permit a recovery "would result in preventing a contractor with the government from contracting in his own behalf for the delivery of any material by a third party unless he was willing to approve the payment of all claims against the subcontractor, which is certainly a burden which the statute does not impose."

Plaintiff relies heavily upon *U. S. for Use of Hill* v. *American Surety Co.*, 200 U. S. 197, 26 S. Ct. 168, 169, 50 L. Ed. 437.

In that case the United States Government took from the contractor a bond with these conditions: It "shall promptly make full payments to all persons supplying it labor or materials in the prosecution of the work provided for in said contract, then the above obligation shall be void and of no effect; otherwise, to remain in full force and virtue." The claimant was permitted to recover against the contractor's surety. The contract gave the right of recovery "to all persons supplying it labor or material in the prosecution of the work." In the instant case the surety promised to pay all debts for which the contractor is liable.

In *Mankin* v. *U. S. to Use of Ludowici-Celadon Co.*, 215 U. S. 533, 30 S. Ct. 174, 175, 54 L. Ed. 315, the bond provided that the contractor should "promptly make payment to all persons supplying them labor or materials in the prosecution of the work contemplated by said contract." It follows the *Hill Case*, and sustains the right to recover although the subcontractor had been paid in full.

In *Taylor* v. *Connett* (C. C. A.) 277 Fed. 945, 946, a subcontractor, working on a government contract, was per-

mitted to recover on a bond which promised "full payments to all persons supplying them (principal contractors) labor or material in the prosecution of the work provided for in said contract."

In *Pavarini and Wyne* v. *Title Guaranty, etc., Co.,* 36 App. Cas. (D. C.) 348, 349, Ann. Cas. 1912 C, 367, the court under a federal statute, which declared that "such contractor or contractors shall promptly make payments to all persons supplying him or them labor or material in the prosecution of the work" held that a claimant under a subcontractor could recover on the bond, being of opinion that the *Hill Case* controlled. This *Hill Case* was also followed in *Smith* v. *Mosier* (C. C.) 169 Fed. 430, but the court took occasion to say that where subcontractors had been paid in full, it was a hardship to require afterwards payment by the principal and his surety of debts which the subcontractor could have paid and did not, and that nothing but a judgment of the Supreme Court forced it to reach the conclusion that payment should be ordered.

By statute in West Virginia Code 1923, chapter 75, section 12, it is required that bonds to secure public construction shall be thus conditioned: "* * * in the event such contractor shall fail to pay in full for all such materials, machinery, equipment, and labor used by him in * * * construction * * * of such * * * structure, * * * then said bond and the sureties thereon shall be responsible to said materialmen, furnisher of machinery or equipment, and furnisher or performer of said labor, or their assigns, for the full payment of the full value thereof."

The court said that the bond required is a statutory substitute for mechanics' liens and protected laborers of subcontractors and for that reason sustained the claim of such a laborer. *Hibner* v. *Eversbach, et al.,* 157 S. E. 178 (W. Va. Sup. Ct. App., February 24, 1931).

This analogy is not entirely fair because notice is very

generally required under mechanics lien laws of any purpose to make claims of this kind.

In *Overman and Co.* v. *Great American Indemnity Co.*, 199 N. C. 736, 155 S. E. 730, 731, the bond in judgment contained this provision: "The contractor 'shall well and truly pay all and every person furnishing material or performing labor in and about the construction of said roadway all and every sum or sums of money due him, them, or any or them, for all such labor and materials for which the contractor is liable." This is word for word the stipulation of the bond in the instant case. The North Carolina court following what it believed to be its manifest major purpose, held that those who dealt with the subcontractor stood, so far as the right to recover for work done and labor done is concerned, just as those did who dealt directly with the principal contractor.

In *State* v. *Southern Surety Co.*, 221 Ala. 113, 127 So. 805, 806, 70 A. L. R. 296, the court had occasion to consider its statute which declared in part as follows: A contractor or contractors "shall promptly make payment to all persons supplying him or them with labor, material * * * in the execution of the work provided for in such contract." It receded from the position which it had therefore taken in *American Surety Co.* v. *United States to Use of Barrett*, 127 Ala. 349, 28 So. 664, and held in conformity with the judgment of the Supreme Court in the *Hill Case* that those who claim through the subcontractor might recover on the contractor's bond. To the same effect see *Portland* v. *Casualty Co.*, 78 Ore. 195, 152 Pac. 253; *Gilmore* v. *Westerman*, 13 Wash. 390, 43 Pac. 345, 346; *Oliver Construction Co.* v. *Williams*, 152 Ark. 414, 238 S. W. 615, 616.

We do not deem it necessary to review the Maryland cases since this question was expressly left open in *State* v. *National Surety Co.*, 148 Md. 221, 128 Atl. 916, the court there said:

"It has been argued that the suit is not maintainable because it is not brought for the recovery of a debt 'for which the contractor is liable,' within the terms and meaning of the bond and of the statute providing for its execution. But upon that theory a claim for labor and material unquestionably used in the construction of the road, but procured by a subcontractor, might be denied the security of the bond simply because it had not been furnished at the principal contractor's direct request. The case presented by this record does not require a decision upon that point."

We think the Maryland court here plainly indicates what its holdings would have been had there been any necessity for it to decide that question.

If the bond could not go beyond the statute we do not think that it could be fairly said that this was a liability incurred by the contractor. When we speak of someone having incurred certain indebtedness there is little room for misunderstanding, and we would feel constrained to follow the Indiana cases, but both the bond and the statute must be considered. The bond is a voluntary undertaking and its terms must be observed. *Aetna Casualty & Surety Co.* v. *Earle-Lansdell Co.*, 142 Va. 435, 129 S. E. 263, 130 S. E. 235; *Clatsop County, etc.* v. *Feldschau*, 101 Ore. 369, 199 Pac. 953, 18 A. L. R. 1221.

The Indiana cases rest upon the statute, which, as we have seen, has been so changed in conformity with the present day drift of opinion as to permit a recovery. *The Farley Case*, (C. C.) 91 Fed. 474, has been overruled by the United States Supreme Court, and the *American Surety Co. Case*, 127 Ala. 394, 28 So. 664, has been expressly overruled by the court which delivered it.

When we come to examine the bond itself (pertinent provisions will not be recopied), we find no difficulty whatever in reaching the conclusion that there should be a recovery

had the words, "for which the contractor is liable," been omitted. For the measure of a contractor's liability we look to general law. Its settled policy, everywhere made manifest, is to protect those who furnish labor, supplies and material used in and about the construction of public works, and of this contractors must take cognizance. Against the shortcomings of subcontractors they and their sureties can be amply protected by proper bonds.

■ Next it is said that his claim is neither for labor, supplies, nor material, but is for rent, and that claims for rent are covered neither by the statute nor by the bond.

As conclusive authority on this proposition, we are referred to *State* v. *National Surety Co.*, 148 Md. 221, 128 Atl. 916, 917. In that case claim was made for the rent of a steam shovel and disallowed. From the opinion it appears that it had been leased not only for work on the contract in judgment, but to the subcontractor for other uses, and in the course of its opinion the court said:

"It formed a part of their equipment for the business in which they were regularly engaged. The monthly rent accruing to the appellant was payable regardless of the extent to which the steam shovel was actually used or of the place where it was operated."

By contract with Daniel Knighton and Company of date July 14, 1928, Boatwright undertook to do certain grading, etc., on this project for which he was to be paid twenty cents a cubic yard. For reasons satisfactory to themselves this contract was set aside and another contract bearing date August 29, 1928, was entered into. These stipulations there appear:

"Now, therefore, this agreement witnesseth: That the said A. S. Boatwright, party of the first part, doth rent unto the said Frank B. Daniel, S. C. Knighton and Roland H. Knighton, partners, trading as Daniel-Knighton and Company, all of the equipment owned by him and now on

said contract number A-53 from 7 o'clock A. M. August 29, 1928, until the completion of the work undertaken by the parties of the second part under said contract number A-53, which said equipment consists of three (3) International five-ton trucks and one (1) White five-ton truck; two (2) White two-ton trucks; one (1) Republic two-ton truck and from one to ten Ford trucks with double transmissions at the following prices, to-wit: $2.75 per hour for the five-ton trucks; $1.75 per hour for the two-ton trucks and $1.25 per hour for the Ford trucks. The party of the first part is to furnish a driver and fuel for each of said trucks while in use and is to keep up all repairs on said trucks and shall receive pay for the use of said trucks for each hour of each day from the time said trucks are ordered to report for duty until they are discharged on that day, and no allowance shall be made for loss of time caused by a slight breakage to any of the trucks or any of the equipment of the parties of the second part.

"The parties of the second part agree that they will always use the larger trucks rented them by the party of the first part in preference to the smaller trucks where possible.

"The party of the first part also rents to the parties of the second part one (1) Fordson tractor grader from 7 o'clock A. M., August 29, 1928, until the completion of the work to be performed under said contract A-53 for the sum of one hundred dollars ($100.00) and the parties of the second part agree to rent said Fordson tractor grader until the completion of their contract aforesaid and to pay to the party of the first part said sum of $100.00 per month and to keep up all repairs on said grader and to return the same on the completion of said contract in as good condition as when received, ordinary wear and tear excepted, and to furnish a driver and fuel for said grader when either is needed."

The account sued on aggregates $10,543.93, and includes three $100.00 items for the rent of tractor. The balance is made up of items for labor, use of trucks charged for by the hour, gasoline, etc., and current repairs, thus differentiating it from the Maryland case.

The contractor and his surety must have known that cuts and fills are not today made with hoe and rake and that modern machinery would be used, and so for reasons heretofore adverted to there can be no valid ground for refusal to pay, up to August 29th, for work done at twenty cents a cubic yard. After that date there was no change whatever in methods used in its prosecution. The only change made was in the mode of computation for compensation. If a claim can be sustained under the contract of July 14th, there is no sound reason for disallowing it under that of August 29th. It was charged for by the hour and it was of the character which must have been expected. The instrumentalities used were no part of any permanent equipment but were hired for this particular job. A claim for hauling by trucks was allowed in *London, etc., Indemnity Co.* v. *State*, 153 Md. 308, 138 Atl. 231.

In *Fidelity and Deposit Co. of Maryland* v. *Bailey-Spencer Hdw. Co.*, 145 Va. 133, 133 S. E. 799, this court said that a claim for teams, labor and miscellaneous articles of hardware came properly under the head of equipment. In *Scheflow* v. *Pierce*, 176 N. C. 91, 97 S. E. 167, a charge for the use of a trenching machine used to dig ditches was approved as coming under the head of equipment. In *Illinois Surety Co.* v. *John Davis Co.*, 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206, the Supreme Court held that rental of cars came under the head of labor and material. In *United States* v. *Port Deposit Quarry Co.* (D. C.), 272 Fed. 698, rental for a derrick or lighter was approved. In *United States* v. *D. L. Taylor Co.* (D. C.), 268 Fed. 635, rental of scows hired by a subcontractor was said to be a proper charge.

It would be an endless task to undertake to deal with individual items and we shall not attempt it. Plaintiff's claim comes within those exceptions noted in the Maryland case and is sustained by the weight of authority.

■ The defendants complain because they are not given credit as of October 10, 1928, for $4,707.99.

Under the contract of August 29, 1928, Daniel, Knighton and Company had given to Boatwright their note for $2,250.00 which Boatwright still held and they were further indebted to him for work done under that contract. The situation was unsatisfactory. Heymond was dissatisfied. He did not know if he was personally liable to Boatwright and he did not want that contingent liability hanging over him. For these reasons he asked Mr. Knighton and Mr. Boatwright to meet him that they might come to some definite understanding and they did meet him on the night of October 9th. At that time there was due from him to somebody, or to become due in a day or two, said sum of $4,707.99. He asked Boatwright if he could pay it to him and take it out of the Knighton account. Boatwright said no, that he was not uneasy about Daniel, Knighton and Company, that he did not want to embarrass them and to go ahead and make the payment directly to them. This was done and Knighton then promised Boatwright to send him a check in a day or two on account. Daniel, Knighton and Company, although they received this sum from Heymond, broke their promise to Boatwright, sent him nothing, and abandoned their subcontract on the 15th of October.

Just why Boatwright preferred that this money be paid over to the subcontractors rather than to him is not perfectly plain. He said that he did not want to embarrass them. Probably he wanted to do nothing which would put them out of business and cause him to lose a profitable contract of rental, but whatever may have been his reasons it is clear that Heymond offered to pay him and that in

reply to that offer he said that he preferred the payments be made to the subcontractors direct, and at his request that was done. If he is again made to pay this sum to the plaintiff he will have paid it twice, for he was obliged to complete, himself, at a heavy loss, the work which the absconding subcontractors had undertaken to do. A payment once made at Boatwright's request is enough.

■ "Where a party to a transaction induces another to act upon reasonable belief that he has waived or will waive certain rights, remedies or objections, which he is entitled to assert, he will be estopped to insist upon such rights, remedies or objections to the prejudice of the one misled. 21 *Corpus Juris*, 'Estoppel,' section 247." *Big Vein Pocohontas Co.* v. *Browning*, 137 Va. 34, 120 S. E. 247, 256.

■ Cross error is assigned. It is said that there was due under the contract of July 14, 1928, from the subcontractors to Boatwright, $4,503.50, and that he is entitled to recover that sum on a *quantum meruit* and not merely the $2,250.00 represented by the note which he took.

It is clear that the note is not payment for anything. The contract of August 29th in terms states that it is "evidence solely of the amount due the party of the first part (Boatwright) from them (Daniel, Knighton and Company) under the contract of July 14, 1928." That contract contains these stipulations:

"Whereas, the parties hereto have mutually agreed between themselves as to the amount due the party of the first part for all work done and performed under said contract of July 14, 1928, and have annulled and cancelled said contract as of 6 o'clock P. M. August 28, 1928; and,

"Whereas, the party of the first part has agreed to except from the parties of the second part a lump sum of twenty-two hundred and fifty dollars ($2,250.00) in full payment for all work done and performed by him under said contract of July 14, 1928."

Nothing was paid and Boatwright had a just claim against the contractor for the "amount due" him from the subcontractor. But he could claim no more. Water does not rise above its source and had the subcontractors paid their note that would have relieved them from all liability to Boatwright accruing before the contract of August 29. Heymond wanted to pay it and Boatwright declined to accept payment. If he had accepted it that would have ended this claim. He could not refuse to accept payment and now claim more.

We think the motion for judgment with account attached is based upon the contract of August 29th. Had the defendant undertaken to dispute for example the rental charge for a tractor and offered evidence to show that it was excessive, he would have been met with the contract which would have been conclusive and so the action is certainly in part for rent at a stipulated contract price and being on contract the recovery must be measured by the contract, but if this were not so it could not affect the results. It is perfectly plain that the contract of July 14th continued in effect until August 29th. The second contract did not blot out the first contract but superseded it and in terms was prospective in its operation. The first contract continued to operate until replaced by the second. It follows that any recovery for work done up to August 29th must be on the first contract and could not possibly be on a *quantum meruit*. We do not know what the difference would be between the amount due based upon the contract and based upon a *quantum meruit*, but we may safely say that it would not be the same. If the present action is based upon a *quantum meruit* a recovery cannot be had for a period covered by a contract, and if it was based upon contract then a recovery cannot be had for a time which that contract did not cover, but which was covered by another.

We find no error in the rejection of the item of $175.00, salary for foreman.

Plaintiff's judgment must be credited by $4,707.99, as of October 10, 1928, and subject to this credit, is affirmed.

*Modified and affirmed.*

EPES, J., dissenting in part.

I do not concur in so much of the opinion of the court in this case as holds that under this statute the contractor and its surety are liable to creditors of the subcontractor for sums due them by the subcontractor for labor and material.

The surety is liable for nothing for which the contractor is not liable.

At common law a contractor, who sublets a part of a contract to a subcontractor, is not liable to a person furnishing labor or material to the subcontractor. The liability of the contractor is solely to his subcontractor. When the contractor has paid his subcontractor in full, he has acquitted his whole liability; and in the instant case the contractor has paid the subcontractor all that is due him.

I have had pointed out to me no Maryland statute which has changed the common law in this respect in a case such as this.

I understand the opinion of the court to hold that the Maryland statute requiring the giving of bond in this case does not of itself require the contractor to give bond to pay the debts of the subcontractor for labor and material furnished to the subcontractor. In this view I heartily concur. But this construction of the statute seems to me to be inconsistent with the pronouncement of the court upon the obligation of the contractor and its surety under the bond. The statute (Code Pub. Gen. Laws 1924, art. 91, section 30) requires the bidder (*i. e.* the contractor) to bind himself "to the payment of all just debts for labor and material incurred by the bidder" (*i. e.* the contractor). The bond, stripped of unnecessary verbiage, obligates the contractor

and his surety to "pay * * * every person furnishing material or performing labor in and about the construction of said roadway * * * all sums * * * due him * * * for such labor and materials *for which the contractor is liable.*"

The bond cannot be construed to make the contratcor liable for the debts of the subcontractor without, in effect, striking out of the bond the words "for which the contractor is liable." Why is it permissible to strike out of the bond these words, and not permissible to strike out of the statute the words "incurred by the bidder?"

As I view the matter, in both instances the liability of the contractor is limited in plain terms to the payment of debts for which he is legally liable; and there is no language in the statute or in the bond which in its usual and ordinary acceptation may be construed to create any new liability upon the contractor by virtue thereof.

The function of a court is to construe the language used in a statute or contract, and enforce the statute or contract as written. It is not its function, or prerogative, to enact a new statute, or write a new or different contract for the parties by the addition or deletion of words. As the court says, the parties to contracts "must abide by their contracts and pay everything which by fair intendment can be charged against them." But by the same token, every party to a contract is entitled to abide by the contract which he has made, and not to be forced to abide by a different contract made for him by the court, because, perchance, it thinks that under sound public policy the legislature, or some administrative officer, should have in terms required him to make such a contract. This seems to me to be a primary and cardinal principle of law which should not be given mere lip service, and then more honored in its breach than in its observance in actual application.

I have examined with care the opinions cited in the court's

opinion, and many others from courts of great ability and high authority. But in so far as they support the conclusions reached by the court, they are either based upon statutes materially different from that here in question, or upon finespun and rather strained arguments.

The arguments advanced seem to me to veil but thinly the underlying fact that the court has either assumed to legislate upon what the bond should be required to provide, or, in effect, has assumed to write a new contract for the parties by making additions or deletions, because in its judgment it was expedient for the legislature, or some administrative officer, to have required such a bond. Some of the opinions read more like an apology for a decision than a reason for a conclusion. In others little attempt is made to justify the decision other than on the ground that it follows the precedent set by some other court.

If it be the intention of the legislature or of a State highway commissioner to require a contractor to give bond to pay the debts of his subcontractor, though he may have in good faith paid the subcontractor in full, it is a very simple matter to so state in plain language in the statute or bond, and to define therein the distance down a possible chain of subcontractors that such liability shall extend. If such is their intention let them say so; but where the statute or the language of the bond, when given its ordinary and usual meaning, and construed as other contracts are construed, fails to provide that the contractor shall be so liable, such a provision should not be inserted by courts by resort to finespun arguments, based primarily upon what they think it would be good public policy to require the contractor to agree to. The very fact that there is none to say them nay should make courts but the more cautious not to assume to legislate or write contracts for people.

It may be that the legislature has the power to make a

contractor doing public work give bond to pay the debts of subcontractors down a chain of subcontractors reaching well nigh *ad infinitum*. But it is not reasonable, in the absence of the plainest of terms, to assume that it or an administrative officer has done so. In view of other decisions by this court and the pronouncement made by the court in this case, it would be interesting had it informed contractors and surety companies how far down a chain of subcontractors the doctrine pronounced by it applies.

The State (A) contracts with B to build a cement road. B contracts with S to furnish the stone for this job. S acquires from a farmer the right to take from a quarry on his land sufficient stone for this job, and contracts with U to quarry the stone and haul it to his crusher on the roadside. U contracts with R to quarry the stone and prepare it for hauling to the crusher. R contracts with D, a water boy, to supply his gang with water while on this job. D contracts with L, the wife of the farmer, to board him and send him his lunch while on this job. L contracts with Y to carry lunch to D while on this job. ("Food stuffs for the men engaged in the work and hay and grain for the teams so engaged" are materials furnished for such work. *Fidelity, etc., Co.* v. *Bailey-Pleasants Co.*, 145 Va. 126, 133 S. E. 797.) How far down this chain does the doctrine pronounced by the court apply?

If A pays B, and B pays S, and S pays U, and U pays R, and R pays L, but L fails to pay Y, may Y sue B and the surety on his bond for what L owes him? If not, what is the line of demarcation; and upon what principle is it drawn? If so, where do we get off?

How long must B withhold payment from S in order that he may not (after both S and U have been paid in full) also have to pay R, if U fail to pay him? And what right has B to withhold from S the sum due him by B, because U may not have paid R? What enactment makes S liable

for sums due by U to R? If the contract between U and
R be a written contract, the claim of R would not be barred
against U for five years, and not until the lapse of three
years if it be an oral contract. Must B refuse to pay S for
five or three years, as the case may be, in order to be pro-
tected against demands of R for sums due him by U?

If the contract between B and S requires B to pay S
weekly for all work done to date, and the contract between
S and U requires S to pay U monthly for all stone prepared
for the crusher, what is B to do? He has no control over
the periods at which S contracts to pay U. May he with-
hold payment from S until the due dates of S's obligations
to U, and not have breached his contract?

Or suppose R undertakes to feed his workmen, and though
the work is being done near Ashland, buys on open account
food stuffs from three Richmond merchants, three Washing-
ton merchants, and three Baltimore merchants, and hauls
the food stuffs to his location by his own trucks. May
these merchants, of whose debts B has no notice or means
of knowledge, sue B and his bondsman at any time before
the debts are due them by R are barred by the three-year
limitation? If so, what means are open to B to ascertain
the outstanding indebtedness of this sub-sub-subcontractor,
R? Or what requirement is there that they notify B of the
fact that U is indebted to them?

The public policy upon which the holding of the court in
this case is based finds legislative expression in the mechan-
ics' lien law. But the legislature has provided the answer
or the key to the answer to the questions above suggested
by definite provisions of the statute which give the lien
or provide for the fixing of personal liability.

Not so with the judicial legislation of the cases which
the court has followed in its opinion. The courts in this
line of cases have given a demonstration of one practical
reason why courts should in such cases be careful not to

enter the field of legislation. They can make a beginning under the garb of construction and, in effect, enact that a contractor shall be liable for the debts of his subcontractors; but this done, they cannot go forward and finish the job. For to provide the necessary definition, limitation and restriction of the liability created by them, they must throw off the cloak of construction and step boldly forth into the legislative field.